UNITED STATES of America, Appellee,

v.

**Marisa LEMM, Appellant.**

UNITED STATES of America, Appellee,

v.

**Phyllis Ellen STONYS, Appellant.**

UNITED STATES of America, Appellee,

v.

**Val Bolton MAGHEE, Appellant.**

**Nos. 80–1832, 80–1836 and 80–1837.**

United States Court of Appeals,
Eighth Circuit.

Submitted May 19, 1982.

Decided June 15, 1982.

Rehearing Denied July 6, 1982.

---

David L. Herzog, Omaha, Neb., argued for Marisa Lemm.

Tom Kelley of Kelley & Kelley, Omaha, Neb., argued, for Phyllis Ellen Stonys.

Terrence Salerno of Kelley & Kelley, Omaha, Neb., argued for Val Bolton Maghee.

* The Honorable J. Smith Henley assumed senior status on June 1, 1982.

1. Four other individuals, Faustino Selvera, David Ridpath, Eugene Gamst and Paul Gamst, were charged in the indictment. Defendants Selvera, Ridpath and Eugene Gamst were indicted under both the RICO conspiracy count and a separate count or counts of mail fraud. These three defendants pleaded guilty and are

Ronald D. Lahners, Edward G. Warin, U. S. Attys., D. Neb., and Robert F. Kokrda, Asst. U. S. Atty., argued, Omaha, Neb., for appellee.

Before HEANEY, HENLEY * and McMILLIAN, Circuit Judges.

HENLEY, Circuit Judge.

This appeal arises from the conviction of appellants Val Bolton Maghee, Phyllis Ellen Stonys and Marisa Lemm for their part in an insurance fraud scheme involving some seventeen arson fires in five states over a three year period.

Appellants were charged in an indictment returned on March 29, 1980 with one count of conspiracy to violate the Act popularly known as RICO. Racketeer Influenced and Corrupt Organizations Provisions, Title IX of the Organized Crime Control Act of 1970, Pub.L.91–452, 84 Stat. 941, codified at 18 U.S.C. §§ 1961 et seq. In addition, they were charged with one count each of mail fraud in violation of 18 U.S.C. §§ 1341 and 1342. All pleaded not guilty at arraignment and the case was tried to a jury in a trial extending over three weeks.[1]

On July 3, 1980 the jury returned a verdict of guilty against each appellant on both counts. Appellant Maghee was sentenced by the district court[2] to eight years and a fine of ten thousand dollars on the conspiracy count and three years on the mail fraud count, the sentences to run concurrently. Stonys received concurrent sentences of five years and three years on the respective counts. Marisa Lemm was sentenced to three year concurrent sentences on each count. We affirm.

The arson and insurance fraud activities underlying the convictions vary from fire to

currently serving their sentences. Defendant Paul Gamst was named only in the RICO conspiracy count. The charge against him was dismissed after trial.

2. The Honorable Robert V. Denney, then United States District Judge for the District of Nebraska, now deceased.

fire, but a general scenario can be summarized. Eugene P. Gamst, the government's chief witness, was a public insurance adjuster licensed in Minnesota. The government's case showed that at some point in the early 1970's Gamst began mixing his legitimate adjustment activities with arson, eventually becoming the center of an arson ring alleged to have existed from April 1, 1975 to September 1, 1978. The basic mode of operation was that Gamst, or occasionally another coconspirator, would recruit an individual to start an arson fire for insurance proceeds. Gamst would instruct the individual how to start the fire, how to act, and what to tell the authorities. After the fire, Gamst would pose as a legitimate public adjuster of an accidental fire. Occasionally, Gamst would also act as a private contractor and repair the fire damage in order to obtain a larger portion of the insurance proceeds. The roles of the other conspirators included providing seed money for the purchases of property, locating property for burning, providing property to be burned, preparing and torching the property, and recruiting others to the scheme. The participation of each appellant hereinafter will be set forth in somewhat more detail.

On appeal, appellants jointly raise three allegations of error: (1) the district court erred in ruling that an "enterprise" within the meaning of RICO was alleged in the indictment and proved at trial; (2) the district court erred in denying motions for severance; and (3) the district court abused its discretion in denying motions for mistrial after Eugene Gamst became the government's chief witness.

Appellant Lemm raises three additional allegations. First, she contends that the district court erred in admitting Gamst's testimony against her without independent proof of her participation in the conspiracy. Second, she argues that the district court's refusal of an instruction on separate conspiracies was prejudicial error. Finally, she asserts that the government failed to prove her guilt beyond a reasonable doubt.

Appellant Maghee asserts that a temporary cessation of arson activity resulted in termination of the conspiracy and variance between the indictment and proof. Like Lemm, he also contends that there was insufficient evidence to support his conviction.

We turn first to the contentions which are put forward jointly.

### (A) The Existence of a RICO Enterprise

Appellants allege that the indictment did not charge and the evidence did not establish an "enterprise"[3] under RICO.[4] We perceive two distinct aspects of this contention.

### (i) Illegal Enterprise

We address first the contention that a wholly illegal enterprise is not within the

---

**3.** "Enterprise" is defined in the RICO Act, 18 U.S.C. § 1961(4), as:

> any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity[.]

The substantive provisions of RICO utilize the word "enterprise" in prohibiting investment in, or acquisition of an interest in, or control of, an enterprise's activities through a pattern of racketeering activity. 18 U.S.C. §§ 1962(a) and (b). Participation in the conduct of an enterprise's affairs through a pattern of racketeering activity is also forbidden. 18 U.S.C. § 1962(c).

Appellants were charged with conspiracy to conduct the affairs of an enterprise through a pattern of racketeering activity in violation of 18 U.S.C. §§ 1962(c) and (d).

**4.** Appellants' trial in district court as well as their original briefing in this court occurred prior to the Supreme Court's ruling in *United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). Appellants were subsequently afforded an opportunity to file supplemental briefs addressing both the impact of *Turkette* and this court's interpretation of *Turkette* in *United States v. Bledsoe*, 674 F.2d 647 (8th Cir. 1982). The cases were originally submitted March 9, 1981 to a panel of Heaney, Circuit Judge, Peck, Senior Circuit Judge (United States Court of Appeals for the Sixth Circuit, sitting by designation) and Henley, Circuit Judge. After supplemental briefing the cases were resubmitted to the present panel.

scope of RICO. This argument has recently been laid to rest by the Supreme Court in *United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). In the face of significant judicial disagreement as to whether a RICO "enterprise" may encompass both legitimate and illegitimate associations, *see United States v. Clark*, 646 F.2d 1259, 1262 at n.7 (8th Cir. 1981) (and citations therein); *United States v. Anderson*, 626 F.2d 1358, 1363–64 (8th Cir. 1980) (and citations therein), *cert. denied*, 450 U.S. 912, 101 S.Ct. 1351, 67 L.Ed.2d 336 (1981), the Court held that wholly illegal enterprises are covered by the legislation. 452 U.S. at 580, 581, 583, 101 S.Ct. at 2528, 2529. Accordingly, we find no ground for reversal in the fact that the government tried this case on the theory that the group, as a RICO enterprise, pursued profit through largely illegal means.

### (ii) The Enterprise in Relation to the Predicate Acts

Appellants' second contention is more troublesome. Appellants argue that the enterprise element must be defined in the indictment and proved at trial as an element apart from the pattern of racketeering. This argument is firmly grounded in the language of the Supreme Court's opinion in *Turkette*, which states that "[t]he existence of an enterprise at all times remains a separate element which must be proved by the Government." 452 U.S. at 583, 101 S.Ct. at 2529. *See also United States v. Bledsoe*, 674 F.2d at 663–665 (8th Cir. 1982); *United States v. Anderson*, 626 F.2d at 1372.

 In light of *Turkette* and the legislative history of RICO, we have held that an "enterprise" must exhibit three basic characteristics: (1) common or shared purpose; (2) some continuity of structure and personnel; and (3) an ascertainable structure distinct from that inherent in the conduct of a pattern of racketeering. *United States v. Bledsoe*, 674 F.2d at 665. These characteristics are mandated be-

cause the purpose of RICO is to eradicate organized crime, *id.* at 661–63, rather than to subject ordinary criminals to the Act's heightened punishment. *Id.* at 664. To guarantee that RICO will be utilized against its intended target, the "enterprise" alleged must involve more than an association of criminals for the commission of sporadic crime. *Id.* at 664–665.

 The requisite characteristics of an enterprise may, of course, be found in both a legal entity and an associational enterprise, as defined by RICO.[5] In the present instance, for example, the evidence suggests that an "enterprise" might be found in Eugene Gamst's public adjustment business, operating under the name Gamst and Associates.

The government chose, however, to indict these appellants under the second prong of the statutory definition of "enterprise." *See* n.5. Count I of the indictment, as incorporated in Count II against the present appellants, alleged an associational enterprise consisting of various persons "associated in fact" for the "purpose of committing acts of arson and defrauding certain insurance companies."

 We cannot sustain the conviction on the ground that a legally incorporated enterprise was shown, when a "legal enterprise" theory was not presented to the jury. *United States v. Bledsoe*, 674 F.2d at 660 (and citations therein); *United States v. Anderson*, 626 F.2d at 1362 n.4. Our affirmance, if any, must involve the associational enterprise on which the government rested its case.

The question before us, therefore, is whether the government proved an "association in fact" of various individuals, and, if so, whether this associational enterprise possessed the characteristics set forth in *Bledsoe*, namely, common purpose, continuity of structure and personnel, and structure distinct from the pattern of racketeering. *United States v. Bledsoe*, 674 F.2d at 665.

---

**5.** The statute includes in the definition of "enterprise" both legal entities such as a partnership, corporation or association, and a "group

of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4).

We review the evidence mindful that the "proof used to establish [the enterprise and the pattern of racketeering] may in particular cases coalesce." *United States v. Turkette*, 452 U.S. at 583, 101 S.Ct. at 2529. We are also obliged on appeal to view the evidence, and all reasonable inferences therefrom, in the light most favorable to the jury verdict. *Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942); *United States v. Hepp*, 656 F.2d 350, 353 (8th Cir. 1981).

*Common Purpose*

▮ We are satisfied that the first characteristic of a RICO enterprise, namely, the shared purpose alleged in the indictment, was convincingly demonstrated here. Each appellant shared with Eugene Gamst the purpose of setting arson fires so as to defraud one or more insurance companies, and each carried out this purpose to some extent.

*Continuity of Structure and Personnel*

The second characteristic, continuity of structure and personnel, presents a closer issue. We conclude, however, that this aspect of the alleged enterprise was also convincingly shown.

▮ Structural continuity exists where an unchanging pattern of roles is necessary and is utilized to carry out the predicate acts of racketeering. Here, the group's arson activities required the recruitment of persons who could purchase real estate, aid in the adjustment of claims, repair damaged property, prepare and set fires, and file fraudulent claims. These activities involved such roles as personnel recruiter, equipment purchaser, real estate broker and torch man. Although the persons filling these roles changed to some extent, the structure of roles remained constant. Eugene Gamst assumed command of the entire network, assigning or recruiting personnel as needed. Persons were specifically recruited to the group because they could fill these roles.[6]

A RICO enterprise is recognizable under 18 U.S.C. §§ 1961(4) and 1962 when organized criminal activity is undertaken through such a criminal infrastructure. *E.g., United States v. McLaurin*, 557 F.2d 1064, 1067, 1072–73 (5th Cir. 1977) (prostitution ring), *cert. denied sub nom. Hamilton v. United States, Christopher v. United States and Bryant v. United States*, 434 U.S. 1020, 98 S.Ct. 743, 54 L.Ed.2d 767 (1978).

▮ Although continuity of personnel was less convincingly demonstrated than continuity of structure, we conclude that this requirement was also met. The requirement of continuity of personnel is not absolute. If it were, the ringleader of an organized criminal operation could defeat RICO charges by occasionally substituting new operatives at the lowest level. We have recognized that the requirement of continuity may be met even where some changes in personnel occur, and where different individuals manage the affairs of the enterprise at different times and different places. *United States v. Bledsoe*, 674 F.2d at 665. The determinative factor is whether the associational ties of those charged with a RICO violation amount to an organizational pattern or system of authority. *Id.*

▮ The evidence here shows an organizational pattern at two levels: each appellant had an on-going relationship with Eugene Gamst, and each had on-going ties to at least some of the lesser operatives.

Appellant Maghee was acquainted with coconspirator Peggy O'Brien before meeting Eugene Gamst. He served as an employment reference for O'Brien to help her purchase a trailer for an arson fire, and was later told that the fire had been set. Maghee thereafter asked O'Brien to provide an introduction to Gamst. A barbecue followed, involving O'Brien, Gamst and Maghee, and this in turn led to a meeting at Maghee's shop for purposes of planning a

---

6. As a licensed real estate broker, Lemm provided the group with easy access to properties for burning. Appellant Stonys functioned as a financer of ventures. Appellant Maghee does not appear to have assumed a specialized role, but this fact does not negate the existence of identifiable roles or the recruitment of others to fill them.

feigned sale of the shop and an arson fire. Some time later, Maghee introduced Gamst to appellant Marisa Lemm. He also provided lodging for conspirators Sterling and Knott after Knott's property was burned. Each of these events, that is, Maghee's provision of an employment reference, his request for an introduction to Gamst, the planning of a feigned sale of Maghee's shop, the recruitment of Lemm, and the provision of lodging preceded or followed acts of arson and mail fraud. The intertwining of social and criminal activities permitted the group to function as a continuous unit with more than sporadic contacts. Maghee's associations with other conspirators went far beyond any "minimal association" necessary to perpetrate the acts of racketeering.[7] *United States v. Bledsoe,* 674 F.2d at 664.

The evidence as to appellant Lemm is similar. Lemm was a licensed real estate broker in Nebraska who approached Gamst about helping a friend "get rid" of a house. Several meetings followed, culminating in Gamst's proposal that she find properties for him to burn. Lemm thereafter entered into a broker-client relationship with Gamst that resulted in at least two real estate sales or attempted sales. The evidence viewed in the light most favorable to the government shows that Lemm understood that the sales were preparatory to arson fires. Gamst and Lemm also met to plan an arson fire at Lemm's own house and to process the insurance claim.

Appellant Stonys was involved with Gamst over an extended period of time, first as a social companion in summer of 1976, then as his assistant in adjusting fires, and finally as a direct participant in the burning of three properties between June, 1977 and December, 1977. In her roles as a recruiter of persons to purchase property, financer of real estate and other purchases, and preparer of property for burning, Stonys met and worked with Lemm and unindicted coconspirators Peggy O'Brien, Pat-rick O'Brien, Nicolette Skelton, Dick Van Sant and Barbara Knott.

The above described facts show that Gamst provided open, continuous leadership for all three appellants and for the arson ring as a whole. This continuity of leadership distinguishes the present case from *Bledsoe,* wherein a divided panel of this court reversed a RICO conviction in part because the majority could find "no real evidence of a structure, a pattern of authority or control." *United States v. Bledsoe,* 674 F.2d at 667. In *Bledsoe,* the two ringleaders of a fraudulent securities scheme dissolved their original agreement. *Id.* at 666–667. Although these same leaders eventually formed a new partnership, the later partnership was secret. The secret participation of one ringleader in later schemes, and the appearance of disjunctive ventures, was necessary due to the refusal of one of the lesser operatives to associate with one of the original leaders. Here, by contrast, Gamst's leadership was open and continuous. At the upper level of organization, the requirement of continuity of personnel was clearly met.

Some continuity of personnel also existed at lower levels of Gamst's organization. Each of the present appellants did more than enter into arson activity with Eugene Gamst for the sole purpose of burning his or her own property. Each had sufficient contact with other operatives to show more than "loose and discontinuous patterns of associations." *Cf. United States v. Bledsoe,* at 667. Each knew about at least some of the other arson fires, and each could not have thought that his or her own fire with Gamst was an independent venture. *Cf. United States v. Bledsoe* at 667 n.12 (evidence was insufficient as to one defendant to show knowledge of the enterprise charged).

### Distinct Structure

The third requisite of a RICO enterprise is structure distinct from that inherent in

---

7. The full extent of Maghee's association may not be reflected in the record. When the enterprise alleged is not a "legal entity," the proof of continuity may of necessity, as here, be circum-stantial. The essence of an "association in fact" is that it is not a legitimate business or other entity operating in the public eye.

the conduct of a pattern of racketeering. *Id.* at 665.

■ An enterprise related to, yet distinct from, the predicate acts was clearly shown here. The arson ring, through hand-delivery of insurance claims, could have conducted its activities without any predicate acts of mail fraud. In other words, if we eliminate for purposes of argument the predicate acts of mail fraud, the evidence still shows an on-going structure which engaged in legitimate purchases and repairs of property as well as acts of arson. Clearly, the enterprise alleged by the government has not been impermissibly equated with the predicate acts of racketeering.

In sum, we conclude that the legal and policy requirements of RICO are met by the enterprise alleged and proved in this case. This is not an instance of a sporadic and temporary criminal alliance to commit one of the enumerated RICO crimes. *Cf. United States v. Aleman*, 609 F.2d 298 (7th Cir. 1979), *cert. denied*, 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980) (two defendants convicted under RICO after committing three home burglaries). RICO was appropriately utilized here as a weapon against organized criminal activity.

*(B) Conspiracy and Misjoinder*

Appellants next allege that the district court abused its discretion in refusing motions for severance. This allegation must be understood in the context of the conspiracy count brought against all the defendants.

*(i) Alleged use of "RICO Enterprise Conspiracy" Theory*

Appellants first allege that the trial judge refused motions for severance on the basis of an erroneous belief that the RICO conspiracy provision, 18 U.S.C. § 1962(d), permits joinder which would otherwise be impermissible under traditional conspiracy doctrine.[8]

Appellants correctly note that some courts have interpreted RICO as a vehicle for expansion of traditional conspiracy theory. *See United States v. Stratton*, 649 F.2d 1066, 1074 n.10 (5th Cir. 1981); *United States v. Barton*, 647 F.2d 224, 237 (2d Cir.), *cert. denied*, 454 U.S. 857, 102 S.Ct. 307, 70 L.Ed.2d 152 (1981); *United States v. Sutton*, 642 F.2d 1001, 1017 (6th Cir. 1980) (en banc); *United States v. Bright*, 630 F.2d 804, 834 n.52 (5th Cir. 1980); *United States v. Elliott*, 571 F.2d 880, 902 (5th Cir.), ("[T]hrough RICO, Congress intended to authorize the single prosecution of a multifaceted, diversified conspiracy by replacing the inadequate 'wheel' and 'chain' rationales with a new statutory concept: the enterprise"), *cert. denied sub nom. Delph v. United States* and *Hawkins v. United States*, 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978); *but see United States v. Sutherland*, 656 F.2d 1181, 1191–95 (5th Cir. 1981) (explaining *Elliott* ), *cert. denied*, ─── U.S. ───, 102 S.Ct. 1451, 71 L.Ed.2d 663 and *sub nom. Maynard v. United States*, ─── U.S. ───, 102 S.Ct. 1617, 71 L.Ed.2d 852 (1982); *United States v. Lee Stoller Enterprises, Inc.*, 652 F.2d 1313, 1322 (7th Cir.) (en banc) (Fairchild, C. J., dissenting) (RICO enterprise does not extend conspiracy to those who had no knowledge of others' unlawful activity), *cert. denied*, 454 U.S. 1082, 102 S.Ct. 636, 70 L.Ed.2d 615 (1981); *United States v. Stratton*, 649 F.2d at 1073 n.8 (doubting, without reaching issue, whether RICO conspiracy would encompass unrelated agreements where conspirators did not know of each other's existence); *United States v. Diecidue*, 603 F.2d 535, 566 (5th Cir. 1979) (Godbold, J., dissenting) (indictment insufficient as to enterprise and conspiracy elements due to lack of clarity), *cert. denied sub nom. Antone v. United States, Gispert v. United States*, 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 781 (1980), and *Miller v. United States*, 446 U.S.

---

**8.** Although appellants raise this argument somewhat obliquely, we conclude that the issue is before us on appeal. Appellants object to the reasoning of *United States v. Elliott*, 571 F.2d 880 (5th Cir.), *cert. denied sub nom. Delph*

*v. United States* and *Hawkins v. United States*, 439 U.S. 953, 99 S.Ct. 349, 58 L.Ed.2d 344 (1978). Their briefs assume that traditional conspiracy doctrine applies.

912, 100 S.Ct. 1842, 64 L.Ed.2d 266 (1980); Note, *Elliott v. United States: Conspiracy Law and the Judicial Pursuit of Organized Crime through RICO,* 65 Va.L.Rev. 109, 121–26 (1979); Bradley, *Racketeers, Congress, and the Courts: An Analysis of RICO,* 65 Ia.L.Rev. 837, 876–79 (1980).

Appellants also point to evidence in the record which shows that the trial court relied on a new view of conspiracy. Despite this evidence, however, we doubt for two reasons that appellants' convictions rest substantially on the use of a new conspiracy theory.

First, the trial court's charge to the jury was patterned after well-established instructions developed in cases brought under the general federal conspiracy statute, 18 U.S.C. § 371. These instructions did not in any way alter or ignore the traditional requirement that conviction could be had only if the defendants knew of the conspiracy, and willfully became members of it.[9]

Second, the present case is factually distinguishable from those requiring the use of a new theory to support conviction. The "RICO conspiracy" doctrine has been invoked to support conviction where a defendant's knowledge of the overall conspiracy could only be inferred from his commission of several predicate acts. *United States v. Elliott,* 571 F.2d at 903. Here, by contrast, there is substantial evidence beyond the predicate acts to show that appellants were knowledgeable members of an ongoing conspiracy. This is also not a case

involving diverse crimes, where criminal expertise developed in one venture could not carry over to other ventures. *Compare United States v. Sutton, supra; United States v. Diecidue, supra; United States v. Elliott, supra.* Rather, methods which proved successful in one fire, such as the staging of an "accident" with paint stripper, here were used in subsequent fires.

■ We conclude that the alleged use of new conspiracy doctrine did little to advance appellants' convictions. *Compare United States v. Zemek,* 634 F.2d 1159, 1169 n.12 (9th Cir. 1980) (conspiratorial objective was not so ill-defined as in *Elliott,* and single overall agreement could be identified under conventional conspiracy doctrine), *cert. denied sub nom. Carbone v. United States,* 450 U.S. 916, 101 S.Ct. 1359, 67 L.Ed.2d 341 (1981), *Caliguri v. United States,* 450 U.S. 985, 101 S.Ct. 1525, 67 L.Ed.2d 821 (1981), and *Janovich v. United States, Mazzuca v. United States, and Williams v. United States,* 452 U.S. 905, 101 S.Ct. 3031, 69 L.Ed.2d 406 (1981). Without reaching the question whether RICO was intended to create a separate species of conspiracy law, in the circumstances of this case we affirm appellants' convictions under traditional doctrine.

### (ii) Single or Multiple Conspiracies

Appellants allege in the alternative that their convictions must be reversed on the ground of variance between the indictment, which alleged a single conspiracy, and proof

---

**9.** The court utilized pattern instructions from 1 Hon. E. Devitt & C. Blackmar, *Federal Jury Practice and Instructions* §§ 23.07, 23.09, 29.05, 29.07, and 29.08 (1970). For purposes of the present appeal, the trial court's only important modification in the pattern instructions involved a change in § 29.08, in which the court instructed that the government must prove as an element of the RICO count a conspiracy

> to conduct or participate directly or indirectly in the conduct of the affairs of an enterprise engaged in or affecting foreign or interstate commerce through a pattern of racketeering activity, consisting of the commission of two or more acts of racketeering activity.

This instruction does not modify the traditional requirement that conspirators knowingly par-

ticipate in an overall scheme, but merely reflects the fact that RICO defines both the objective of a RICO conspiracy and the means to be used.

Since appellants allege that they were denied the benefits of traditional conspiracy doctrine, they do not challenge the use of traditional instructions in a RICO context. We intend no comment here on the appropriateness of utilizing traditional instructions in a RICO context. *Cf. United States v. Karas,* 624 F.2d 500, 503 (4th Cir. 1980) (affirming conviction under RICO conspiracy provision where both general conspiracy charge and charge relating to RICO were given), *cert. denied,* 449 U.S. 1078, 101 S.Ct. 857, 66 L.Ed.2d 800 (1981).

of multiple conspiracies. *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed.2d 1557 (1946). They state that the evidence is insufficient to sustain the jury's finding of a single conspiracy, *United States v. Losing*, 560 F.2d 906, 911 (8th Cir.), *cert. denied*, 434 U.S. 969, 98 S.Ct. 516, 54 L.Ed.2d 457 (1977), and that the trial court's denial of motions for severance was based on a clearly erroneous finding of a single conspiracy in the totality of the circumstances. *United States v. Tercero*, 580 F.2d 312, 315 (8th Cir. 1978) (context of alleged violation of guarantee against double jeopardy).[10]

■ Appellants' argument for multiple conspiracies essentially reiterates the contention that an overall RICO enterprise did not provide a link between Eugene Gamst's various endeavors at arson with different conspirators. We have found to the contrary that the present appellants were participants in an ongoing structure. This ground requires no retreading. *See generally* discussion at part A(ii), *supra*.

The only new facet of appellants' argument is the assertion that one conspiracy, involving Eugene Gamst, Peggy O'Brien and Robert Sterling, originated and terminated in Minneapolis, Minnesota between May, 1975 and September, 1975. After a lapse in arson activities from September, 1975 to May, 1976, Gamst allegedly initiated a second conspiracy in Omaha, Nebraska, beginning with the fire at Maghee's shop on June 20, 1976. None of the present appellants was directly involved in arson activities prior to the nine-month cessation of arson activity.

■ In our view, this brief cessation of arson activity does not divide the enterprise into two conspiracies, so long as there was an overlap in method and personnel between the two stages of the group's operations. The essence of the government's conspiracy charge is not an agreement to perform predicate acts of arson without cessation. Rather, a RICO conspiracy charge alleges agreement to participate in conducting the affairs of an enterprise through the commission of two predicate acts within a ten-year period of time. 18 U.S.C. § 1961(5), 1962(c), 1962(d); [11] *United States v. Martino*, 648 F.2d 367, 394 (5th Cir.), (rehearing en banc granted in 648 F.2d 367 1981), *vacated in part on different grounds sub nom. United States v. Holt*, 650 F.2d 651 (1981); *United States v. Barton*, 647 F.2d at 234–37; *United States v. Zemek*, 634 F.2d at 1170 n.15.

■ A single conspiracy is indicated where, as here, the RICO enterprise has one major goal which is accomplished through a predictable routine and where the enterprise has an infrastructure marked by continuous existence. *United States v. Winter*, 663 F.2d 1120, 1136 n.25 (1st Cir. 1981); *United States v. Clemones*, 577 F.2d 1247, 1253 (5th Cir. 1978), *modified on other grounds*, 582 F.2d 1373, *aff'd sub nom. United States v. LeCompte*, 599 F.2d 81 (1979), *cert. denied*, 445 U.S. 927, 100 S.Ct. 1313, 63 L.Ed.2d 759 (1980). We have previously noted here the existence of an enterprise with continuous existence, as well

**10.** Appellant Lemm raises the related contention that the district court abused its discretion in refusing an instruction on multiple conspiracies. It is not clear from the record that such an instruction was sought by the defense. In any case, given our conclusion as to the above allegations, Lemm's contention is without merit.

**11.** The RICO statute admittedly does not make clear whether each RICO conspiracy defendant must agree that someone in the enterprise will commit two predicate acts, whether each must agree personally to commit two such acts, or whether each member must actually commit two such acts. *United States v. Winter*, 663

F.2d 1120, 1136 (1st Cir. 1981) (RICO conspiracy requires that each defendant agreed to commit two or more specified predicate crimes); *cf. United States v. Sutherland*, 656 F.2d 1181, 1186–87 n.4 (5th Cir. 1981) (RICO conspiracy requires that at least one conspirator committed at least one overt act), *cert. denied*, —— U.S. ——, 102 S.Ct. 1451, 71 L.Ed.2d 663, and *sub nom. Maynard v. United States*, —— U.S. ——, 102 S.Ct. 1617, 71 L.Ed.2d 852 (1982). Regardless of the answer to this question, we here find that each appellant did in fact agree personally to commit two such acts and did commit two acts of racketeering.

as the overlap in method between many of the fires. *Cf. United States v. Sutherland*, 656 F.2d at 1190 (multiple RICO conspiracies existed where government did not attempt to prove a single conspiracy, where government did not suggest that one scheme benefitted from another and where conspirators neither knew nor should have known each other).

 Although appellants were not involved in the first stage of the conspiracy, they are chargeable as members of the conspiracy so long as they knowingly contributed efforts in furtherance of it. *United States v. Burchinal*, 657 F.2d 985, 990 (8th Cir.), *cert. denied*, 454 U.S. 1086, 102 S.Ct. 646, 70 L.Ed.2d 622 (1981). A coconspirator may become a member of a conspiracy without being in at its inception. He adopts the previous acts of his fellow conspirators when, with knowledge of the conspiracy's existence, he undertakes to further its design. *Id.* A conspirator also need not know all of the conspirators or be aware of all the details of the conspiracy, so long as the evidence is sufficient to show knowing contribution to the furtherance of the conspiracy. *United States v. Fuel*, 583 F.2d 978, 981 (8th Cir. 1978), *cert. denied sub nom. Greene v. United States*, 439 U.S. 1127, 99 S.Ct. 1044, 59 L.Ed.2d 88 (1979).

In the facts of the present case, we conclude that a single conspiracy was shown to exist and that appellants were knowing members of it. *Cf. United States v. Zemek*, 634 F.2d at 1167–68.

*(iii) Coconspirator's Hearsay Statements*

Appellant Lemm alleges that Eugene Gamst's hearsay testimony was erroneously admitted without sufficient independent proof of the existence of a conspiracy in which she was a member. Under Fed.R. Evid. 801(d)(2)(E), much of Gamst's testimony was inadmissible hearsay unless, on evidence exclusive of the statements, the district court was satisfied that the statements more likely than not were made during the course and in furtherance of an illegal association in which appellant was a party. *United States v. Bell*, 573 F.2d 1040, 1044 (8th Cir. 1978).

At the close of the evidence, the district court complied with the procedure commanded by *Bell*, finding explicitly on the record that the hearsay statements were admissible. On careful review of the record, particularly the testimony of Peggy O'Brien and Richard Van Sant, we affirm the district court's ruling of admissibility.

*(iv) Joinder Under Fed.R.Crim.P. 8 and 14.*

 Appellants finally allege that they were improperly joined for trial on mail fraud counts which involved distinct and separate fires. Appellants' argument assumes that their convictions on the RICO conspiracy count must be reversed. Having affirmed the conspiracy convictions, we find that joinder of the mail fraud counts was proper.

 Fed.R.Crim.P. 8(b) provides that two or more defendants may be charged in the same indictment "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Where transactions are part of the "same series," a conspiracy count will usually be included in the indictment or could have been. *United States v. Sutton*, 642 F.2d at 1037 (upholding joinder on 268 counts where RICO conspiracy was also charged); *United States v. Bright*, 630 F.2d at 812–13 (RICO charge served as uniting influence to create valid joinder); *United States v. Campanale*, 518 F.2d 352 (9th Cir. 1975), *cert. denied sub nom. Matthews v. United States* and *Granchich v. United States*, 423 U.S. 1050 (1976); *cf. United States v. Turkette*, 632 F.2d 896, 906–10 (1st Cir. 1980) (where only uniting influence was invalid RICO count, offenses were misjoined), *rev'd on other grounds*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981); *United States v. Winter*, 663 F.2d at 1139 (with RICO conspiracy count eliminated, joinder was prejudicial); *see also United States v. Welch*, 656 F.2d 1039, 1051 (5th Cir. 1981) (joinder of offenses constituting predicate acts is proper under RICO *substantive* charge). The

existence of a single conspiracy lends prima facie correctness to the joinder of the mail fraud counts. 8 J. Moore, *Moore's Federal Practice*, ¶ 8.06[2] at 8–37 and n.42 (1981 Rev.).

■ Appellants failed to show such prejudice from joinder as would compel the trial court to exercise its discretion in granting severance under Fed.R.Crim.P. 14. Relief from prejudicial joinder becomes necessary when a jury could not be expected to compartmentalize the evidence as it relates to separate defendants. *United States v. Reeves*, 674 F.2d 739 at 744 (8th Cir. 1982); *United States v. Boyd*, 610 F.2d 521, 525 (8th Cir. 1979), *cert. denied sub nom. Clark v. United States* and *Artez v. United States*, 444 U.S. 1089, 100 S.Ct. 1052, 62 L.Ed.2d 777 (1980). Here, the trial court expressly instructed the jury that although appellants were tried together, their guilt or innocence must be determined from evidence which applied as if they were being tried alone. The record discloses no reason why the jury could not be expected to follow this instruction. *See also United States v. Stratton*, 649 F.2d at 1073 n.8 (because of interrelationship of RICO conspiracy components, overt acts and substantive offenses, allegation of prejudicial joinder was without merit).

### (C) Denial of Mistrial

■ The remaining issues raised in this appeal merit little discussion. Appellants allege that the district court abused its discretion in denying motions for mistrial after Eugene Gamst's change of plea. Gamst initially appeared before the jury as a defendant, but after jury selection, he changed his plea to guilty and became the government's chief witness. Appellants contend that the jury could not avoid applying Gamst's admission of guilty to his codefendants.

This argument is meritless, given the trial court's instruction to the jury that a guilty plea of an accomplice should not be considered as evidence of guilt as to any other person. The court also instructed that the evidence was to be considered separately as to each defendant. Defense coun-

sel made no objection to the introduction of Gamst's plea agreement into evidence, but instead utilized the guilty plea as a weapon to attack Gamst's credibility. *Compare United States v. McClintic*, 570 F.2d 685, 692 (8th Cir. 1978) (lenient terms of plea bargains were not placed before court or jury). Gamst's change of plea may in fact have aided the remaining defendants by encouraging the jury to conclude that these defendants went to trial because they believed they were innocent.

### (D) Sufficiency of the Evidence

Finally, appellants Lemm and Maghee contend that the evidence failed to establish their guilt beyond a reasonable doubt.

■ We disagree. The evidence against Lemm was at least as strong as that against convicted defendants in similar RICO prosecutions. *United States v. Martino*, 648 F.2d at 395 (rejecting alleged incompetency and incredibility of evidence from government witness as to defendant Scionti).

■ Although there was conflicting evidence as to Maghee's ownership of the vacuum shop and financial interest in the insurance proceeds, the evidence leaves little doubt that Maghee expected to benefit from that arson fire. His ultimate reward from the venture is irrelevant. The essential elements of mail fraud are a scheme to defraud, use of the mails for the purpose of executing the scheme, and intent to defraud. *United States v. Midtuane*, 589 F.2d 370, 374 (8th Cir.), *cert. denied*, 442 U.S. 917, 99 S.Ct. 2837, 61 L.Ed.2d 284 (1979). The evidence was sufficient to establish these elements against Maghee, as well as his participation in the conspiracy.

The district court's judgment of conviction as to all three appellants is affirmed.

HEANEY, Circuit Judge, dissenting.

I accept the majority's interpretation of the RICO provisions in question here. It is

consistent with *United States v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981); *United States v. Bledsoe*, 674 F.2d 647 (8th Cir. 1982); and *United States v. Anderson*, 626 F.2d 1358 (8th Cir. 1980). I reject, however, their conclusion that the evidence was sufficient to sustain the convictions on the RICO counts.

In my view, the evidence fails to show either that the defendants shared with Gamst and with each other a common purpose, that there was a continuity of structure or personnel, or that a structure distinct from that inherent in the predicate acts of racketeering, the series of arson fires, existed. The most that the evidence proves is that Gamst planned and executed a series of arson fires with one or more of the defendants. The fires were not the product of a unified system of operation. Each incident succeeded or failed on its own. There was no showing of shared risks or profits and only a limited showing of shared purpose among some, but not all, of the defendants.

The evidence does show that each of the defendants worked with Gamst in carrying out one or more arson fires. It does not establish, however, that they worked with one another over a period of time as a part of an ongoing enterprise. Each defendant may have known that Gamst worked with other persons in setting fires and collecting insurance benefits, but there is little or no evidence to support the view that the participants were a part of a joint venture.

Accordingly, I dissent.