**MEDICAL INCORPORATED, Plaintiff,**

v.

**ANGICOR LIMITED, and Robert L. Kaster, Defendants.**

**No. 3–85 CIV 625.**

United States District Court, D. Minnesota, Third Division.

Jan. 18, 1988.

Leonard, Street and Deinard by Robert
P. Davis and Robert L. DeMay, Minne-
apolis, Minn., for plaintiff.

Thompson and Lundquist, Ltd. by John W. Lundquist, Minneapolis, Minn., for defendant Robert L. Kaster.

Brenner, Workinger and Thompson by William L. Moran and Joseph G. Thompson, Edina, Minn., for defendant Angicor Ltd.

### ORDER

ALSOP, Chief Judge.

This matter comes before the undersigned upon defendant Kaster's motion to dismiss and defendant Angicor's motion to dismiss, or alternatively for summary judgment.[1] Although the motions were submitted to the court at different times, the court will address both motions in this order because the motions involve common issues of law and fact.

### I. BACKGROUND.

Because the respective motions are essentially motions to dismiss, all allegations in the amended complaint are assumed to be true and the motions should be denied unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Bennett v. Berg*, 685 F.2d 1053, 1057 (8th Cir.1982), *en banc*, 710 F.2d 1361 (1983), *cert. denied*, 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983).

In its amended complaint, Medical alleges that defendants formulated and implemented a fraudulent scheme to misappropriate Medical's trade secrets and to wrongfully use such information in competition with Medical. Specifically, plaintiff alleges that while employed with Medical, Kaster was privy to Medical's trade secrets, and that such disclosures were made to Kaster only after he agreed not to disclose them to others or to use them himself except in his employment at Medical. Plaintiff further alleges that following termination of his employment with Medical, Kaster took or retained Medical's proprietary information relating to heart valves

and subsequently used such confidential information to manufacture and sell heart valves in unfair competition with Medical. Defendants' alleged use of Medical's trade secrets allegedly violated several federal statutory laws, including 18 U.S.C. § 1341 (mail fraud), § 1343 (wire fraud), and § 2314 (transportation of stolen goods).

Plaintiff's amended complaint contains four counts. In counts I and II, plaintiff asserts a cause of action under the Racketeer Influenced and Corrupt Organization Act ("RICO") against Kaster and Angicor respectively. In count III, plaintiff asserts a pendent state law claim for misappropriation of trade secrets against both Kaster and Angicor. In count IV, plaintiff asserts a pendent state law claim for unjust enrichment against Kaster relating to a state court action entitled *Regents of the University of Minnesota v. Medical, Inc.*

Defendant Kaster moves for dismissal of the entire amended complaint as against Kaster. Kaster argues that plaintiff failed to state a claim with regard to the RICO and misappropriation of trade secrets counts and that plaintiff's claim of unjust enrichment is collaterally stopped. Alternatively, Kaster requests dismissal of the state law claims without prejudice (counts III and IV) under *Gibbs* if the court dismisses the RICO claims.

Defendant Angicor also moves to dismiss the entire complaint as against Angicor. Like Kaster, Angicor argues that plaintiff failed to state a claim under RICO.[2] Angicor argues that the remaining state law claim against Angicor should be dismissed without prejudice under *Gibbs*.

### II. DISCUSSION.

A. RICO.

1. *Pattern of Racketeering Activity.*

Plaintiff alleges that defendants violated all four provisions of 18 U.S.C. § 1962. Although each of the substantive provi-

---

1. Although defendant Angicor has moved for summary judgment in the alternative, it has not submitted any matters outside the pleadings that it wishes the court to consider.

2. In addition, Angicor argues that plaintiff failed to plead its RICO count with sufficient particularity.

sions, (a), (b) and (c), is directed at a particular type of conduct, the provisions have common elements of proof. Under each substantive provision, a plaintiff must allege and prove a pattern of racketeering activity. 18 U.S.C. § 1962(a), § 1962(b) and § 1962(c).

The United States Court of Appeals for the Eighth Circuit has adopted a restrictive interpretation of the pattern requirement. In addition to the universally adopted requirement that a plaintiff must allege and prove several related racketeering or predicate acts in furtherance of a single criminal scheme, the Eighth Circuit requires a plaintiff to allege and prove that a defendant has committed the same or similar racketeering activity in the past, or is engaged in other criminal activities elsewhere. *Superior Oil Co. v. Fulmer*, 785 F.2d 252, 257 (8th Cir.1986) (interpreting continuity plus relationship requirement of *Sedima, S.P.R. L. v. Imrex Co.*, 473 U.S. 479, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985)). To satisfy this latter requirement, a plaintiff must allege and prove two or more illegal or criminal schemes.

Although not providing a descriptive definition of what constitutes multiple schemes, the Eighth Circuit has provided a case-by-case definition of what does not constitute multiple criminal schemes through numerous pattern cases decided since *Superior Oil*. *See, e.g., Holmberg v. Morrisette*, 800 F.2d 205 (8th Cir.1986); *Deviries v. Prudential–Bache Securities, Inc.*, 805 F.2d 326 (8th Cir.1986); *Madden v. Gluck*, 815 F.2d 1163 (8th Cir.1987), *cert. denied*, — U.S. ——, 108 S.Ct. 86, 98 L.Ed.2d 48 (1987); *Ornest v. Delaware North Companies*, 818 F.2d 651 (8th Cir. 1987); *Allright Missouri, Inc. v. Billeter*, 829 F.2d 631 (8th Cir.1987); *H.J., Inc. v. Northwestern Bell Telephone Co.*, 829 F.2d 648 (8th Cir.1987); *Terre Du Lac Assn., Inc. v. Terre Du Lac, Inc.*, 834 F.2d 148, 149–50 (8th Cir.1987).

These cases instruct that numerous predicate acts occurring over a long period of time do not, standing alone, constitute multiple illegal schemes. *H.J.*, 829 F.2d 648 (8th Cir.1987) (five-year scheme not a pattern); *Ornest*, 818 F.2d 651 (8th Cir.1987) (eight-year fraudulent scheme to defraud plaintiffs and plaintiff's predecessors of contractual share of vending machine sales commissions not a pattern); *Deviries*, 805 F.2d 326 (8th Cir.1986) (six-year scheme of alleged misrepresentations and churning of investment account not a pattern). In addition, a "vast array of fraudulent activities," including a check-kiting scheme, diversion of corporate assets, defrauding of creditors by preparing and distributing false financial statements and failure to comply with the terms of a financial agreement do not, standing alone, constitute multiple criminal schemes. *Gluck*, 815 F.2d 1163 (8th Cir. 1987), *cert. denied*, — U.S. ——, 108 S.Ct. 86, 98 L.Ed.2d 48 (1987). Finally, even the victimization of multiple, unrelated parties over a significant period of time does not, standing alone, constitute multiple criminal schemes. *See Gluck*, 815 F.2d 1163 (8th Cir.1987) (victims were employees and creditors of defendant); *Henning v. First Bank of Worthington*, 831 F.2d 299 (8th Cir.1987) (the court stated in dicta that "simply because the Bank's single fraudulent scheme involved victims other than the Hennings, we cannot say that the Bank engaged in similar activities in the past or that [it] was engaged in other criminal activities elsewhere"); *see also Allright Missouri*, 829 F.2d 631 (8th Cir.1987).

The closest the Eighth Circuit has come to providing some of the considerations involved in determining whether conduct constitutes multiple schemes was in *United States v. Kragness* where the court stated:

Here we think it clear that even our more restrictive view of the pattern requirement has been met, for there is evidence of not two but three separate schemes: first, there was a scheme to import marijuana into La Junta; second, there was a cocaine-and-quaalude scheme; and third, there was a scheme to import marijuana into the Phoenix area. The cocaine-and-quaalude project constitutes a separate scheme because, *inter alia*, it involved drugs different from that in the other schemes, a different drug supplier from a different country, a different United States base of

operations (Anadarko/Chickasha), different customers, and the participation of a number of persons, such as Benanti and his associates, who were not involved in the marijuana schemes. While the La Junta and Phoenix schemes both involved marijuana from Oaxaca, Mexico, they nonetheless were separate schemes. They involved different United States bases of operation and different methods of smuggling the marijuana into the country (the La Junta marijuana was generally flown directly from Oaxaca to the United States, while the Phoenix marijuana was first driven to a point near the United States border). Further, there were a number of participants in each scheme who took no part in the other. Finally, the two schemes were separated by a substantial period of time; the last La Junta-based drug activities were in early 1981, while the earliest Phoenix activities were in mid–1982. We consequently have little difficulty in concluding that the pattern requirement was met here.

830 F.2d 842, 858 (8th Cir.1987).

In its responsive memorandum, plaintiff lists three illegal "schemes" that it claims are separate and distinct:

1) the theft, destruction and secretion of Medical's documents and trade secrets; 2) the use of Medical's trade secrets to develop, market and finance a competing heart valve; and 3) the submission of false data to the United States Food and Drug Administration ("FDA") in order to obtain the right to export certain heart valves.

Plaintiff further alleges that defendants violated 18 U.S.C. § 1341 (mail fraud), § 1343 (wire fraud), and § 2314 (transportation of stolen goods) in carrying out the first two schemes, and 18 U.S.C. § 1341 (mail fraud) in carrying out the last scheme. If proved, each of the above-mentioned alleged violations of federal statutes would constitute racketeering activity within the meaning of the RICO statute. 18 U.S.C. § 1961(1). In response to plaintiff's allegations, both defendants assert that

plaintiff has failed to allege two illegal schemes.

■ The court has little difficulty concluding that plaintiff's first two alleged schemes actually constitute a single illegal scheme to misappropriate Medical's trade secrets. Trade secrets are of little value to the person stealing them, unless that person uses the trade secrets in one way or another. The fact that defendants allegedly chose to use the trade secrets to manufacture a heart valve as opposed to selling the trade secrets to a third party does not make such conduct a separate scheme.

■ The FDA scheme is a closer question. If the court understands the plaintiff's position, plaintiff argues that this conduct constitutes a separate scheme for two separate and distinct reasons. First, plaintiff argues that defendants' fraudulent conduct in obtaining export approval for the heart valve allegedly created using Medical's trade secrets is an expanded use of the stolen trade secrets and, therefore, a new and different scheme. For the same reasons that the first two alleged schemes are not distinct schemes, this alleged scheme merges with the two previously discussed schemes.

Alternatively, plaintiff argues that the alleged false submissions to the FDA constitutes a separate criminal scheme to defraud the United States Government. Under this scenario, the fraudulent conduct was submitting false testing data to the FDA, the victim of the fraudulent conduct was the United States, and the United States' property interest was the granting of the export approval.

■ Although Angicor failed to address the issue in its memorandum, at oral argument Angicor argued that the alleged false submissions to the FDA cannot constitute racketeering activity because such conduct does not give rise to a private cause of action. While it is true that there is no private cause of action for violations of the Food, Drug and Cosmetic Act, plaintiff is not required to show that a defendant's conduct creates a private cause of action to establish a racketeering act. Instead, rack-

eteering activity is defined by the RICO statute, and included within this definition is mail fraud. Moreover, case law supports the proposition that a person can be convicted under the mail fraud statute for defrauding the United States out of money or property. *See United States v. Miller,* 545 F.2d 1204, 1216 n. 17 (9th Cir.1976) (mail fraud statute was intended by Congress to apply to a scheme to defraud United States through evading taxes) (and cases cited therein); *United States v. Mirabile,* 503 F.2d 1065, 1066–67 (8th Cir.1974) (mail fraud statute was intended to apply to scheme to defraud state government). *See also McNally v. United States,* —— U.S. ——, 107 S.Ct. 2875, 2881 n. 8, 97 L.Ed.2d 292 (1987).

The more difficult aspect of the plaintiff's alleged FDA scheme is whether FDA export approval constitutes a property right within the meaning of the mail fraud statute. The mail fraud statute criminalizes schemes to defraud any number of victims, including persons, businesses, or governments. In a recent decision, however, the Supreme Court limited the scope of prohibited activities to fraudulent schemes to obtain money or property. *McNally v. United States,* —— U.S. ——, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987).

In *McNally,* the Court rejected the interpretation by several lower courts that the money and property requirement of the mail fraud statute included an intangible right of the citizenry to good government. The Court reaffirmed the notion that the words "to defraud" refer "to wronging one in his property rights by dishonest methods or schemes and usually signify the deprivation of something of value by trick, deceit, chicane, or overreaching." *Id.* 107 S.Ct. at 2880–81 (quoting *Hammerschmidt v. United States,* 265 U.S. 182, 188, 44 S.Ct. 511, 512, 68 L.Ed. 968 (1924)).

Shortly after the *McNally* decision, however, the Supreme Court made it clear that it was not completely abandoning an intangible aspect to the property right requirement. *Winans v. United States,* —— U.S. ——, 108 S.Ct. 316, 98 L.Ed.2d 275 (1987). In *Winans,* a Wall Street Journal reporter

improperly disclosed the contents of a column he authored. The Court held that although the Journal could not demonstrate specific pecuniary losses flowing from the disclosures, the confidential business information in question was properly protected by the mail fraud statute.

■ Although admittedly a close question, the court believes the FDA's interest in approving exports is more similar to the intangible right of the citizenry to good government than the intangible property right a business has in its confidential business information. An intangible property right is merely an interest in property which has no physical existence. *Black's Law Dictionary,* 636 (5th ed. 1983). Property is anything of value. *Model Penal Code* § 223.0. In *Winans,* the exclusive use of the confidential business information contained in the Heard column was of some value to the Wall Street Journal, although the value was difficult to measure in financial terms. In *McNally,* the intangible right to good government was not sufficiently susceptible to valuation so as to qualify as a property right under the mail fraud statute.

The purpose of the Food, Drug and Cosmetic Act is to protect the consuming public. *See McDermott v. Wisconsin,* 228 U.S. 115, 33 S.Ct. 431, 57 L.Ed. 754 (1913). The process of obtaining export approval is simply a method used by the FDA to protect the consuming public abroad. While export approval likely has a definite and measurable value to the recipient, there is no indication that the FDA has any financial interest, tangible or intangible, in issuing or not issuing export approval.

■ Consequently, the FDA does not have a cognizable property interest under the mail fraud statute in granting export approval. Hence, plaintiff's alleged FDA scheme does not constitute a second criminal scheme.

### 2. Enterprise Distinct From Pattern of Racketeering.

■ Defendant Angicor argues that plaintiff failed to allege an "enterprise"

that has an ascertainable structure distinct from that inherent in the conduct of a pattern of racketeering. *See United States v. Lemm*, 680 F.2d 1193, 1198–201 (8th Cir.1982). It is enough to satisfy this requirement if the plaintiff shows an enterprise related to, yet distinct from, the predicate acts. *Id.* at 1201. Plaintiff has not alleged that the association-in-fact enterprise existed solely for the purpose of carrying out the alleged illegal conduct. Instead, it may be assumed for purposes of this motion to dismiss that plaintiff could show that this same enterprise manufactured and sold products unrelated to Medical's trade secrets. Therefore, similar to *Lemm,* if the court eliminates the alleged mail fraud and transportation of stolen goods, there still exists an ongoing structure which engages in the legitimate business of developing, manufacturing and selling medical devices. *Id.* Consequently, the plaintiff has satisfied this requisite of a RICO enterprise.

### 3. *Enterprise Distinct from Person.*

The majority of the circuits, including the Eighth Circuit, have held that an entity enterprise must be distinct from the "persons" named as defendants under § 1962(c).[3] *Bennett v. Berg*, 685 F.2d 1053 (8th Cir.1982) *en banc,* 710 F.2d 1361 (1983), *cert. denied,* 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983). There is a split of authority concerning whether an entity enterprise must be distinct from the person under § 1962(a) or § 1962(b). *Compare Haroco v. American National Bank and Trust Co.*, 747 F.2d 384, 401 (7th Cir. 1984); *Schofield v. First Commodity Corp.*, 793 F.2d 28, 32 (1st Cir.1986); *B.F. Hirsch v. Enright Refining Co.*, 751 F.2d 628, 633 (3rd Cir.1984); *Welek v. Solomon*, 650 F.Supp. 972, 974 (E.D.Mo.1987); *Klapper v. Commonwealth Realty Trust*, 657 F.Supp. 948, 955 (D.Del.1987) (and cases cited therein) *with United States v. Computer Sciences Corp.*, 689 F.2d 1181, 1190 (4th Cir.1982), *cert. denied,* 459 U.S. 1105, 103 S.Ct. 729, 74 L.Ed.2d 953 (1983); *Rush*

*v. Oppenheimer & Co. Inc.*, 628 F.Supp. 1188, 1196 (S.D.N.Y.1985); *H.J., Inc. v. Northwestern Bell Telephone Co.*, 648 F.Supp. 419, 427 (D.Minn.1986), *aff'd,* 829 F.2d 648 (8th Cir.1987) (affirmed on other grounds). In addition, there is a less developed split of authority concerning whether an entity that is a member of an association-in-fact enterprise can also be a person under § 1962(a), (b) or (c). *Compare Haroco,* 747 F.2d at 401 (dicta); *Fustok v. Conticommodity Service, Inc.*, 618 F.Supp. 1074, 1075–76 (S.D.N.Y.1985) *with Klapper,* 657 F.Supp. at 955; *United States v. Standard Drywall Corp.*, 617 F.Supp. 1283, 1292–94 (E.D.N.Y.1985).

Defendant Angicor apparently argues that a member of an association-in-fact enterprise cannot be a person under § 1962(a), (b) or (c), while plaintiff argues the contrary position.

■ Unfortunately, the Eighth Circuit has yet to pass on either of the above-mentioned controversial issues. For purposes of this motion, however, resolution of these issues by the Eighth Circuit is not critical. This is so because the facts of this case are sufficiently analogous to the facts of *Berg,* to bring the case within the holding of *Berg,* despite plaintiff's attempt to characterize the enterprise as an association-in-fact and to include as members of the enterprise numerous "co-conspirators." The co-conspirators are merely businesses used by defendants to manufacture and sell defendants' heart valves. There is no allegation that these "co-conspirators" were familiar with one or more of the racketeering activities. After eliminating the co-conspirators from the enterprise, the composite members of the enterprise are identical to the persons named as defendants, which is proscribed by *Berg.*

### B. *State Law Claims.*

■ The final issue to be resolved is whether the court should retain jurisdiction over the plaintiff's pendent state law

---

3. There are two classes of enterprises: legal entity enterprises, which include individuals, partnerships, corporations, associations or other legal entities, and associations-in-fact enterprises. 18 U.S.C. § 1961(4).

claims. Predictably, defendants argue that the state law claims should be dismissed while the plaintiff urges the court to retain jurisdiction. Both parties concede, however, that despite the lack of independent federal jurisdiction, it is within the court's sound discretion to retain jurisdiction over pendent state law claims following dismissal of all federal claims. *See Rosado v. Wyman*, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970). Factors that are relevant when exercising this discretion include considerations of judicial economy, convenience and fairness to litigants, and avoidance of needless decisions of state law. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed. 2d 218 (1966); *H.J., Inc. v. Northwestern Bell Telephone Co.*, 648 F.Supp. 419, 429 (D.Minn.1986), *aff'd*, 829 F.2d 648 (8th Cir. 1987). The instant action was commenced over two years ago. For various reasons, however, minimal discovery has occurred and neither party has moved the case towards readiness for trial. Consequently, there has been no substantial commitment of federal judicial resources. In addition, defendant has raised the defense of collateral estoppel in response to plaintiff's claim for unjust enrichment based upon a prior state court decision. It would be more appropriate, although not required, to allow a state court to determine the effect of this prior state court decision. *Cf. H.J.*, 648 F.Supp. at 430 (novel questions of state law favors dismissal). Finally, the plaintiff will not be prejudiced by dismissal because both of the defendants have agreed that the statute of limitations on the state court actions will be tolled during the pendency of this federal lawsuit.

Based upon the record as presently constituted and the foregoing discussion,

IT IS ORDERED That:

1. The motions of defendants Angicor and Kaster to dismiss plaintiff's RICO counts with prejudice are granted.

2. The motions of defendants Angicor and Kaster to dismiss without prejudice plaintiff's pendent state law claims are granted, conditioned upon defendants filing in this court within twenty (20) days of the date of this order their consent that the statute of limitations is tolled during the pendency of this federal action on the causes of action asserted in counts III and IV.

3. The effective date of this order is stayed thirty (30) days from the date of its entry.