765 So.2d 39 (2000)
Ralph GROSS, Jr., Petitioner,
v.
STATE of Florida, Respondent.
No. SC95302.
Supreme Court of Florida.
July 14, 2000.
*40 Samuel R. Halpern, Fort Lauderdale, Florida, for Petitioner.
Robert A. Butterworth, Attorney General, Celia Terenzio, Bureau Chief, West Palm Beach, and James J. Carney and Marrett W. Hanna, Assistant Attorneys General, West Palm Beach, Florida, for Respondent.
PER CURIAM.
We have for review the decision in Gross v. State, 728 So.2d 1206 (Fla. 4th DCA 1999), which the court certified to be in conflict with the opinion in Boyd v. State, 578 So.2d 718 (Fla. 3d DCA 1991), concerning the definition of the "enterprise" element of the Florida Racketeering Influenced and Corrupt Organizations (Florida RICO) statute. We have jurisdiction. See art. V, § 3(b)(4), Fla. Const. For the reasons expressed below, we approve Gross, and disapprove Boyd.

PROCEEDINGS BELOW
The following facts are undisputed and set forth in the opinion of the Fourth District:
Appellant [Ralph Gross, Jr.], who lived in Broward County, had been friends with Christopher Forester since *41 the early 1980's. In 1991 Forester was living in Ft. Pierce and became friends with his neighbor, John Brady, a police officer. By 1993 Forester and Brady developed a scheme to rob suspected drug dealers. The modus operandi called for them to go to the victim's home dressed and acting as police officers in order to gain entry. Brady enlisted his partner, Evans, and Forester recruited appellant, whose role was principally to select and identify Broward County victims and point out their homes. Because most of the victims were appellant's acquaintances, he did not go into the homes or directly participate in the robberies. His routine was to drive to the victim's home, give his accomplices a signal, and depart for the designated rendezvous to await his share of the loot.
Over a period of approximately a year these four, together with several others who were brought in on certain of the crimes, committed a series of planned home invasion robberies. Relevant to the issues on this appeal are the incidents on the night of September 10, 1993. On that date, Forester, Brady, and Evans drove to Broward County and met with appellant. Several victims, including Mr. Mattos and Mr. Duffy, were identified, and the evening's frolic commenced. Appellant led the others to Mr. Duffy's home, then departed. Mr. Duffy was not home but Forester, Brady and Evans found an open sliding glass door, entered and stole drugs and money. They again met with appellant and he led them to Mr. Mattos' home. Mr. Mattos was home. Brady and Evans identified themselves as police officers, entered the Mattos home, and robbed Mr. Mattos and his mother. Both Brady and Evans were armed with handguns.
Gross, 728 So.2d at 1207. Based upon these facts, Gross was charged under Florida's RICO act as well as with sixteen other felony counts involving the home invasions.
At trial, Gross moved for a directed verdict of acquittal as to the RICO charge on the ground that the State had failed to prove the "enterprise" element of the statute. The court initially deferred ruling on the motion, but when the motion was later renewed, it was denied. Subsequently, at a conference on jury instructions Gross asked that the following special instruction be given to the jury concerning the enterprise element of the RICO charge:
I would ask this on Count 1 that you read the definition of racketeering as I set fort [sic] in my Paragraph 1, I read that to you yesterday that in order for there to be racketeering, the State must prove the following elements beyond a reasonable doubt, and they say two but I ask that you add this, that the defendant was employed by, associated with an ongoing, structured, criminal enterprise. Such prove [sic] must show that the criminal enterprise had an identifiable decision making structure and a mechanism for controlling and directing the criminal enterprise on an ongoing rather than an ad hoc basis-and if you want to say for a special purpose that the jury knows what ad hoc means, I even looked it up-that the various employees or associates functioned as a continuous unit, and the criminal enterprise had an existence separate and apart from the pattern of racketeering activity in which the criminal enterprise engaged.
This requested instruction was denied.
After the State's closing argument, Gross renewed his request for the above instruction, which was again denied. Thereafter, the jury returned guilty verdicts on seventeen felony counts, including the RICO count and counts for each of the predicate offenses. Gross's motion for arrest of judgment, renewed motion for judgment of acquittal, and motion for new trial were all denied. On appeal, the Fourth District affirmed Gross's convictions and approved the trial court's denial of Gross's motions and requests for a special instruction regarding the definition of *42 enterprise. See Gross, 728 So.2d at 1209. In so doing, the Fourth District rejected the definition of enterprise set out in Boyd v. State, 578 So.2d 718 (Fla. 3d DCA 1991).
In Boyd, the defendant was convicted of a RICO violation as well as various crimes committed during a two-week crime spree which included multiple armed robberies, auto theft, and a second-degree murder related to the shooting of one of his associates by the police. See 578 So.2d at 719-20. The Third District reversed the conviction for the RICO count on the ground that the State failed to prove the criminal enterprise element of RICO. Boyd applied the definition of enterprise as adopted by several federal circuits. See United States v. Riccobene, 709 F.2d 214 (3d Cir.1983). Specifically, the court held the State must establish the following three elements: (1) an ongoing organization, formal or informal, with an identifiable decision-making structure, for controlling and directing the group on an ongoing, rather than an ad hoc basis; (2) that the various associates function as a continuous unit; and (3) that the organization have an existence separate and independent from the pattern of racketeering in which it engages. See Boyd, 578 So.2d at 721-22. The Third District concluded that the RICO statute was not intended for the prosecution of criminals who merely got together from time to time to commit sporadic criminal acts. Rather, in order to come under RICO, "there must be proof, minimally, of a purposive systematic arrangement between members of the group." Id. at 722. The jury instruction requested by Gross closely parallels the holding of Boyd.
In the instant case the Fourth District expressly rejected Boyd`s definition of enterprise as advanced by Gross. The Fourth District applied a broader, less restrictive definition of enterprise as espoused by the Federal Eleventh Circuit, which specifically rejects any requirement of a decision-making structure, sometimes referred to as an "ascertainable structure," in establishing an enterprise. See Gross, 728 So.2d at 1208 (quoting United States v. Cagnina, 697 F.2d 915, 920 (11th Cir. 1983)).

FLORIDA RICO
The Florida RICO statute was largely modeled after the Federal RICO Statute. See Fla. S. Comm. on Crim. Just., Select Comm. on Organized Crime HB 2127 (1977) Staff Analysis 2 (June 2, 1977) (available at Fla. Dep't of State, Div. of Archives, ser. 18, carton 1285, Tallahassee, Fla.). The "enterprise" and "pattern of racketeering activity"[1] elements of RICO are almost identical to the Federal RICO provisions. Specifically, section 895.03(3), Florida Statutes (1993), makes it "unlawful for any person employed by, associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of racketeering activity or the collection of an unlawful debt." An enterprise is defined as:
[A]ny individual, sole proprietorship, partnership, corporation, business trust, union chartered under the laws of this state, or other legal entity, or any unchartered union, association, or group of individuals associated in fact although not a legal entity; and it includes illicit as well as licit enterprises and governmental, as well as other, entities.
§ 895.02(3), Fla. Stat. (1993). Given the similarity of the state and federal statutes, Florida courts have looked to the federal courts for guidance in construing RICO provisions. See, e.g., State v. Nishi, 521 *43 So.2d 252, 253 (Fla. 3d DCA 1988); State v. Bowen, 413 So.2d 798, 799 (Fla. 1st DCA 1982).

FEDERAL RICO STATUTE
The federal RICO statute provides, inter alia, that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in ... interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c) (1994) (emphasis added); United States v. Parise, 159 F.3d 790, 794 (3d Cir.1998); United States v. Allen, 155 F.3d 35, 40 (2d Cir.1998). The element of "enterprise" is defined as including "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4) (1994). A "pattern of racketeering activity" is defined as requiring "at least two acts of racketeering activity, one of which occurred after the effective date of this chapter and the last of which occurred within ten years (excluding any period of imprisonment) after the commission of a prior act of racketeering activity." 18 U.S.C. § 1961(5) (1994).
The U.S. Supreme Court has carefully distinguished the "enterprise" element from the "pattern of racketeering activity" element and emphasized that the enterprise element has a separate and distinct meaning that must be proven by the government:
That a wholly criminal enterprise comes within the ambit of the statute does not mean that a "pattern of racketeering activity" is an "enterprise." In order to secure a conviction under RICO, the Government must prove the existence of an "enterprise" and the connected "pattern of racketeering activity." The enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct. The pattern of racketeering activity is, on the other hand, a series of criminal acts as defined by the statute. The former is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit. The latter is proved by evidence of the requisite number of acts of racketeering committed by the participants in the enterprise. While the proof used to establish these separate elements may in particular cases coalesce, proof of one does not necessarily establish the other. The "enterprise" is not the "pattern of racketeering activity"; it is an entity separate and apart from the pattern of activity in which it engages. The existence of enterprise at all times remains a separate element which must be proved by the Government.
United States v. Turkette, 452 U.S. 576, 583, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981) (emphasis added) (citation omitted).[2] Despite Turkette's attempt at clarification of the enterprise requirement, the federal circuits have differed on the meaning of the enterprise element.
For instance, several circuits have narrowly construed the enterprise requirement. See United States v. Fiel, 35 F.3d 997, 1003 (4th Cir.1994); United States v. Sanders, 928 F.2d 940, 943-44 (10th Cir. 1991); United States v. Riccobene, 709 F.2d 214 (3d. Cir.1983); United States v. Bledsoe, 674 F.2d 647, 665 (8th Cir.1982). These circuits require a showing that the enterprise be an ongoing and separate entity beyond the mere commission of the *44 alleged predicate criminal acts. Specifically, the Third Circuit has interpreted Turkette to require a finding of evidence of "an ongoing organization, formal or informal," "that the various associates function as a continuing unit," and the existence of a structure independent of the predicate acts.[3]Riccobene, 709 F.2d at 221-223. That ascertainable structure may be proved by showing that a "group engaged in a diverse pattern of crimes or that it has an organizational pattern or system of authority beyond what was necessary to perpetrate the predicate crimes." Bledsoe, 674 F.2d at 665 (emphasis added). Hence, these circuits interpret Turkette to essentially inquire as to whether the removal of the predicate acts would necessarily eliminate the enterprise. If the answer is yes, there is no separate enterprise; if the answer is no, an enterprise is established. This is essentially the view adopted by the Third District in Boyd.
By contrast, other circuits have adopted a broad view of Turkette's definition of enterprise. Specifically, the Eleventh and Second Circuits have simply rejected the requirement of any "ascertainable structure." The Eleventh Circuit has interpreted RICO to reach any group of individuals "whose association, however loose or informal, furnishes a vehicle for the commission of two or more predicate crimes." United States v. Cagnina, 697 F.2d 915, 920 (11th Cir.1983) (quoting United States v. Elliott, 571 F.2d 880, 898 (5th Cir.1978)); accord United States v. Qaoud, 777 F.2d 1105 (6th Cir.1985). Similarly, the Second Circuit has held that an enterprise may be defined by what it does rather than by some "abstract analysis of its structure." United States v. Bagaric, 706 F.2d 42, 56 (2d Cir.1983). Bagaric further points out that it is only natural to characterize as an enterprise a group of individuals who join together, and therefore are "associated in fact," for the purpose of committing criminal activities.[4]See id. at 56. This is the view approved by the Fourth District in Gross.
The difference among the circuits in the definition of the enterprise element rests mainly on differing views of the legislative intent behind Federal RICO. The narrow view is essentially predicated on the belief that RICO was enacted to stop the infiltration of organized crime and racketeering into legitimate organizations. See Bledsoe, *45 674 F.2d at 661. Hence, the opinions adopting this view point out that at the time of the enactment of RICO, Congress was specifically concerned with the proliferation of organized crime into labor unions and various legitimate industries. See id. Consequently, RICO was enacted to combat the spread of organized crime which threatened the viability of businesses and the economic state of the country itself. In that vein, RICO was not intended to target ordinary criminals regardless of the number of their crimes nor to simply expand the breadth of the general conspiracy laws.
Other courts have considered RICO's scope and purpose to be much broader and not limited solely to the eradication of organized crime. See United States v. Qaoud, 777 F.2d at 1114-17. Under this view RICO was enacted to combat both the spread of organized crime and other general patterns of criminal activities that may not neatly fall under the existing view of organized crime. See id. Hence, the RICO statute may be used to prosecute various types of illicit undertakings. See United States v. Elliott, 571 F.2d 880, 898 (5th Cir.1978) ("There is no distinction, for `enterprise' purposes, between a duly formed corporation that elects officers and holds annual meetings and an amoeba-like infra-structure that controls a secret criminal network.").

FLORIDA RICO'S ENTERPRISE ELEMENT
As discussed above, the various federal circuits are in disagreement on the appropriate definition of an enterprise under the federal RICO statute. However, because the approach used by any particular federal circuit is merely persuasive and not binding, we are free to adopt either the narrow view, which requires the proof of a structure separate and distinct from the enterprise, see Riccobene, 709 F.2d at 221, or the broad view, see Cagnina, 697 F.2d at 920, which does not.
We decline Gross's invitation to adopt the narrow approach. Instead, following the language of Turkette, we hold that in order to prove an enterprise, the State need only establish two elements: (1) an ongoing organization, formal or informal, with a common purpose of engaging in a course of conduct, which (2) functions as a continuing unit. See Turkette, 452 U.S. at 583, 101 S.Ct. 2524. As further stated in Turkette, the evidence used to establish the pattern of racketeering element may very well be the one used to establish the enterprise element. See id.; see also Boyd, 578 So.2d at 724 ("If the proof is sufficient to show the existence of the association-in-fact (including the continuity and common purpose elements outlined in Turkette), then proof of details of the group's organizational and decision-making structure is surplusage.") (Cope, J., specially concurring).
We agree with those who have noted that, by their very nature, criminal organizations are, in most instances, not structured like legitimate business entities. See Elliott, 571 F.2d at 898. For obvious reasons, their activities usually require a great deal of secrecy, minimal exposure, and minimal contact among their members. See id. Accordingly, direct evidence of a structure may be difficult to obtain. See id. In fact, requiring proof of an ascertainable structure would practically result in many instances in the State having to rely on a codefendant or an inside informant from within the criminal organization in order to prove its case. See Boyd, 578 So.2d at 724 (Cope, J., specially concurring). Without such direct evidence it would become extremely difficult, if not impossible, for the State to successfully prosecute members of a criminal enterprise under the narrow definition of enterprise. Moreover, we agree with the opinion in Elliott, that a "jury should be permitted to draw the natural inference arising from circumstantial evidence of association." *46 571 F.2d at 898.[5]

SUFFICIENCY OF THE EVIDENCE
We also conclude that, after viewing the evidence in the light most favorable to the State, see D.R. v. State, 734 So.2d 455, 459 (Fla. 1st DCA 1999), the State presented sufficient evidence at trial to support the enterprise element and Gross's RICO conviction, according to the two-part standard delineated above.
The first element, requiring proof of the existence of an ongoing organization with a common purpose of engaging in a course of conduct, was established by the State. This element may be proved with evidence of the common purpose among the members. See United States v. Lemm, 680 F.2d 1193, 1199 (8th Cir.1982); Zielie, 734 F.2d at 1463. In Lemm, the defendants perpetrated an insurance fraud scheme involving some seventeen arson fires in five states over a three-year period. The court found a common purpose where each of the defendants shared with the others the purpose of setting arson fires so as to defraud insurance companies, and all of them carried out this purpose through their participation in the acts. See id.
In the instant case, the testimony reveals that Gross and his associates were committing the various crimes for more than a year. In fact, they would discuss and coordinate their crimes well in advance, sometimes months. They also procured police hats and uniforms to wear during the commission of the robberies so that the unsuspecting victims would let them into their homes without any resistance. Therefore, as is evident by their participation and coordination of events in the commission of the various crimes, a jury could reasonably conclude that his associates shared the requisite common purpose of an ongoing organization. See Lemm, 680 F.2d at 1199.
We also find sufficient evidence of the continuity element. Continuity exists where an unchanging pattern of roles is necessary and utilized to carry out the predicate acts of racketeering. See id. As noted in the district court's opinion, Gross's role was to find victims, drive to the victims' houses, and then point out the houses to his associates who were usually following him in another car. Forrester, Brady, and Evans would then pull in at the victim's home and, posing as police officers, enter the homes and steal money, drugs or whatever valuables were available. As provided by Lemm, this pattern of roles, which remained more or less the same at each home invasion robbery, constitutes sufficient proof of the requisite continuity.[6] Thus, there was sufficient evidence *47 to establish both subelements of the enterprise requirement. Therefore, Gross's motion for arrest of judgment, renewed motion for judgment of acquittal, and motion for new trial were all properly denied by the trial court.

RICO INSTRUCTION
We also find that the trial court did not err by not giving Gross's proposed instruction on the enterprise element. Unquestionably, a defendant is entitled to have the trial court properly instruct the jury on the essential and material elements of the charged crime. See State v. Delva, 575 So.2d 643, 644 (Fla.1991). However, a trial court's rejection of a jury instruction that is an incorrect statement of the law is not error. See Russell v. State, 576 So.2d 389, 391-92 (Fla. 1st DCA 1991); Watson v. State, 504 So.2d 1267, 1269 (Fla. 1st DCA 1986). As mentioned earlier, Gross requested an instruction which would have essentially required the State to establish an ascertainable structure in order to prove the enterprise element, a standard which we have rejected herein. The trial court refused and gave the standard jury instruction instead. The standard instruction is in fact the RICO statute which defines an enterprise as:
[A]ny individual, sole proprietorship, partnership, corporation, business trust, union chartered under the laws of this state, or other legal entity, or any unchartered union, association, or group of individuals associated in fact although not a legal entity; and it includes illicit as well as licit enterprises and governmental, as well as other, entities.
§ 895.02(3), Fla. Stat. (1993). The instruction on ascertainable structure requested by Gross simply did not properly state the law as we have found here. Therefore, the trial court properly rejected the instruction.[7]

CONCLUSION
In order to prove RICO's enterprise element, the State must prove the following two elements: (1) an ongoing organization, formal or informal, with a common purpose of engaging in a course of conduct, which (2) functions as a continuing unit. Accordingly, we disapprove of the opinion in Boyd, and approve the outcome in Gross in accord with our opinion today.[8]
It is so ordered.
WELLS, C.J., HARDING, LEWIS and QUINCE, JJ., concur.
ANSTEAD, J., concurs in part and dissents in part with an opinion, in which SHAW, J., concurs.
PARIENTE, J., concurs in part and dissents in part with an opinion.
ANSTEAD, J., concurring in part and dissenting in part.
I do not believe the majority's disposition of this case on the jury instruction issue can be reconciled with due process requirements. It is well established that a trial court must properly instruct the jury *48 on the essential elements of the crime charged. The standard jury instructions are published to guide a trial court in carrying out this important duty. However, the standard jury instructions are merely a guide, and where they are inadequate, a trial court must nonetheless properly charge the jury. See State v. Hubbard, 751 So.2d 552, 554 (Fla.1999) (citing Steele v. State, 561 So.2d 638, 645 (Fla. 1st DCA 1990)).
Hence, where a defendant, in the absence of a sufficient standard instruction, requests an accurate instruction on her defense, the failure to give such an instruction will ordinarily constitute reversible error. See Oliver v. State, 707 So.2d 771, 772-73 (Fla. 2d DCA 1998). Generally, the defendant is entitled to an instruction where (1) the requested instruction accurately states the law, (2) the facts in the case support the giving of the instruction, and (3) the instruction is necessary to the resolution of the relevant issues. See Brunner v. State, 683 So.2d 1129, 1130 (Fla. 4th DCA 1996).
In the instant case the trial court erred in giving the standard jury instruction rather than the expanded instruction requested by the defendant. Gross requested an instruction which would have essentially required proof of an ascertainable structure, in addition to the ongoing organization and continuity elements of a RICO enterprise. The trial court denied the request and instead gave the standard jury instruction which is almost identical to the statutory definition of enterprise:
[A]ny individual, sole proprietorship, partnership, corporation, business trust, union chartered under the laws of this state, or other legal entity, or any unchartered union, association, or group of individuals associated in fact although not a legal entity; and it includes illicit as well as licit enterprises and governmental, as well as other, entities.
§ 895.02(3), Fla. Stat. (1997).

CONTROLLING LAW
At the outset, it should be mentioned that Gross's proposed instruction contained a correct statement of the controlling law at the time it was submitted. A trial court is obligated to follow decisions of the district court of appeal, and where there is no decision on point from the district court for the circuit in question, the trial court is bound to follow precedents of other district courts of appeal. See Pardo v. State, 596 So.2d 665, 666-67 (Fla.1992) ("[I]n the absence of interdistrict conflict, district court decisions bind all Florida trial courts."). Here, there was no decision on point in the Fourth District, the district which encompasses the circuit court in this case. However, the Third District had in fact established the definition of a RICO enterprise in Boyd v. State, 578 So.2d 718, 721-22 (Fla. 3d DCA 1991). Even more telling is the fact that two other district courts of appeal had not only applied Boyd's standard, but had also cited to Boyd in their opinions. See State v. Jackson, 677 So.2d 938, 941 (Fla. 2d DCA 1996); Brown v. State, 652 So.2d 877, 879 (Fla. 5th DCA 1995). Hence, the trial court should have given the instruction requested by Gross since the instruction contained a correct statement of the prevailing law.
Needless to say, the definition of enterprise was a vital and disputed issue in this case since the State was alleging the existence of a criminal enterprise and the defense was vigorously claiming otherwise. As noted above, where the instruction accurately states the law, and where the requested instruction goes to the core of the defense's case, the trial court's failure to give that instruction requires a new trial. See Brunner, 683 So.2d at 1130. Such was clearly the case here.
It is also apparent that the standard jury instruction set out above is so inadequate that it could not have properly guided the jury in determining whether a RICO enterprise existed here. Nothing makes that clearer than the majority decision itself. In rejecting Boyd's standard, *49 the majority requires the State to prove: (1) an ongoing organization, formal or informal, with a common purpose of engaging in a course of conduct, which (2) functions as a continuing unit. As such, the State does not have to prove an "ascertainable structure." Under the majority's holding, nevertheless, the standard instruction above does not even come close to reflecting the majority's two-part test.
Essentially, the standard instruction broadly defines a RICO enterprise as any associated group of individuals, licit or illicit. Certainly, it takes more than just any associated group of licit or illicit individuals to have a RICO enterprise. Clearly, something about that "association," as found by the majority, must be present in order to bring it under RICO. See generally David Vitter, Comment, The RICO Enterprise as Distinct from the Pattern of Racketeering Activity: Clarifying the Minority View, 62 Tulane L.Rev. 1419, 1447-48 (1988) ("[T]he language must mean that any of the types of entities listed can constitute an illegitimate RICO enterprise under the proper circumstances."). In fact, there can very well be an associated group of individuals, licit or illicit, that is not an "ongoing organization ... which functions as a continuing unit." Therein lies the clear inadequacy of the standard instruction.
Finally, the Court's request that a new instruction be formulated to reflect today's approved definition of enterprise could not be a clearer recognition of the facial inadequacy of the standard instruction. See majority opinion at 47, note 7. To the extent of the recognition of that inadequacy, Gross's jury was improperly directed by that instruction. Therefore, Gross should have the benefit of an instruction which incorporates the relevant elements (the two-part test adopted today), as will be the case for future defendants being prosecuted under RICO. That is only consistent with due process and our own requirement that a trial court properly instruct a jury on the essential elements of the crime charged. See State v. Delva, 575 So.2d 643, 644 (Fla.1991).
SHAW, J., concurs.
PARIENTE, J., concurring in part and dissenting in part.
Because I agree with Judge Cope's specially concurring opinion in Boyd v. State, 578 So.2d 718, 723-25 (Fla. 3rd DCA 1991), I concur with the majority's disapproval of the Third District's opinion in Boyd and our adoption of the two-prong test for an enterprise that does not include the necessity of proving an ascertainable structure. However, I agree with Justice Anstead that a reversal is required in this case because the standard instruction did not adequately set forth the test that we now adopt and because the instruction requested by the defendant properly set forth the existing law.
NOTES
[1] Although the pattern of racketeering activity is not at issue here, it is defined as:

[E]ngaging in at least two incidents of racketeering conduct that have the same or similar intents, results, accomplices, victims, or methods of commission or that otherwise are interrelated by distinguishing characteristics and are not isolated incidents, provided at least one of such incidents occurred after the effective date of this act and that the last of such incidents occurred within 5 years after a prior incident of racketeering.
§ 895.02(4), Fla. Stat. (1993).
[2] Though the Supreme Court addressed the issue of whether an enterprise must have an existence clearly distinct from the pattern of racketeering activity element, the main issue in the case was whether an illegal entity could be considered an enterprise for RICO purposes. See Turkette, 452 U.S. at 578, 101 S.Ct. 2524. The Court answered this question in the affirmative.
[3] It should be noted that while there may be slight variations in the language used to define enterprise within the "narrow view" line of circuits, the above elements are always required. See, e.g., United States v. Kragness, 830 F.2d 842, 855 (8th Cir.1987). More importantly, the narrow view line of circuits always emphasizes the requirement of proving a structure independently of the predicate acts.
[4] Other circuits appear unclear on whether an ascertainable structure is required in order to prove an enterprise. The Seventh Circuit demonstrates this inconsistency. At one point, this circuit found that a group organized to commit three home burglaries sufficiently met the definition of enterprise, where the burglaries were carefully planned in advance by the same persons. See United States v. Aleman, 609 F.2d 298, 302-06 (7th Cir. 1979). The same circuit later found that an enterprise required more than a group of individuals who get together to commit a pattern of racketeering. See United States v. Neapolitan, 791 F.2d 489, 500 (7th Cir.1986). In fact, the court went on to emphasize the requirement of an "ascertainable structure," the exact language incorporated by the Third, Fourth, Eighth, and Tenth circuits. See id. (citing United States v. Anderson, 626 F.2d 1358, 1372 (8th Cir.1980)). More recently, the Seventh Circuit reiterated the requirement of a structure before finding an enterprise. See United States v. Rogers, 89 F.3d 1326, 1337 (7th Cir.1996). However, it went on to state that while there must indeed be some structure to distinguish an enterprise from a conspiracy, "there need not be much." Id. This kind of back-and-forth approach within a circuit reflects the divergence of views surrounding the issue of whether an ascertainable structure is necessary to establish the enterprise element. See also United States v. Owens, 167 F.3d 739, 751 (1st Cir. 1999); United Energy Owners Committee v. United States Energy Management Systems, Inc., 837 F.2d 356, 362 (9th Cir.1988); United States v. Perholtz, 842 F.2d 343, 363 (D.C.Cir. 1988).
[5] Nevertheless, our adoption of the broad view should not be taken to signify that the RICO statute can be used to supplant or expand the breadth of the conspiracy statute or prosecutions under that statute. Nor does it permit the prosecution of any garden variety criminal undertakings. Indeed, as this Court has previously stated:

By requiring a continuity of criminal activity as well as a similarity and interrelatedness between these activities, the target of RICO Act prosecutions will be, appropriately, the professional or career criminal and not non-racketeers who have committed relatively minor crimes.
Bowden v. State, 402 So.2d 1173, 1174 (Fla. 1981). We adhere to the view that while the State's ability to prove the enterprise element should not be hindered by having to prove an ascertainable structure, the State should equally not be able to routinely invoke the RICO statute for prosecuting any ordinary set of crimes. Cf. Schmidt v. Fleet Bank, 16 F.Supp.2d 340, 346 (S.D.N.Y.1998) ("[C]ourts must always be on the lookout for the putative RICO case that is really `nothing more than an ordinary fraud case clothed in the Emperor's trendy garb.'") (quoting In re Integrated Resources Real Estate Limited Partnerships, 850 F.Supp. 1105, 1148 (S.D.N.Y.1993)). In fact, the Eleventh Circuit itself has emphasized that "[a] pattern of racketeering activity alone is not a crime under RICO. The gravamen of a RICO offense is conducting an enterprise through a pattern of racketeering activity." United States v. Zielie, 734 F.2d 1447, 1463 (11th Cir.1984) (citing United States v. Elliott, 571 F.2d 880 (5th Cir.1978)).
[6] Here, we are referring to continuity of personnel and structure, but this continuity element need not be absolute. In other words, even if old members leave the criminal organization, and totally new members join, altering the original makeup of the organization, we would still have a continuing unit. See Kragness, 830 F.2d at 855. In fact, that may at times be a very good sign of an efficient criminal enterprise.
[7] Although the trial court was bound to follow Boyd in the absence of controlling law from the Fourth District, we find any error in failing to do so harmless under our analysis and holding here. Nevertheless, we are requesting that the Committee on Standard Jury Instructions in Criminal Cases formulate a new instruction to reflect our adoption of the definition of enterprise above. In the meantime, trial courts shall entertain proposed instructions that are consistent with our definition of enterprise as contained herein.
[8] We note, however, that although we approve Gross over Boyd, we do not determine that the standard approved today would have affected the result reached in Boyd. As discussed earlier, the facts in Boyd showed that the two individuals were engaged in a sporadic two-week crime spree. See Boyd, 578 So.2d at 719-20. These circumstances were not consistent with an ongoing organization which functioned as a continuing unit.