WARNER, J.
The main issue presented in this appeal is whether the act of tying the victim’s hands while appellant committed a robbery constitutes the act of kidnapping, where appellant did not untie the victim after the conclusion of the crime. Appellant moved for judgment of acquittal on this ground, which the trial court denied. We agree and affirm his conviction. We also find no merit in the remaining issues raised.
*914 Four men were involved in a series of armed robberies and kidnappings, two of which' appellant directly participated in. These two robberies occurred at two liquor stores. In each of the robberies, one of the robbers approached the store clerk with gun drawn. In the first robbery, the store clerk dropped to the floor and did not move, but the robbers tied his hands behind his back with a zip tie. After the robbery was completed, the clerk could not untie himself and had to go to another store to get- help to untie his hands and to call the police. In the second robbery, involving two clerks, the robbers ordered both clerks to the ground and tied their hands behind their backs. Neither of those clerks could untie themselves until the police arrived.
Appellant Castro was charged with three counts of robbery with a firearm, kidnapping with a firearm, racketeering, and conspiracy to racketeer. At trial, he moved for judgment of acquittal on the kidnapping charges on the basis that the tying of the victim’s hands did not constitute a kidnapping. The trial court denied the motion. A jury then convicted him of all counts. The trial court sentenced him to thirty-year concurrent terms on the racketeering charges; life with a twenty-year minimum mandatory as to one of the counts of robbery and kidnapping; and life for the remaining two kidnappings, concurrent with fifteen-year sentences on the remaining two robbery counts. From his conviction and sentence, he appeals.
In reviewing a ruling on a motion for judgment of acquittal, a de novo standard of review applies. Pagan v. State, 830 So.2d 792, 803 (Fla.2002).
Kidnapping is defined in section 787.01(l)(a)2., Florida Statutes (2008), as “forcibly, secretly, or by threat confining, abducting, or imprisoning another person against her or his will and without lawful authority, with intent to ... [cjommit or facilitate commission of any felony.” In Faison v. State, 426 So.2d 963 (Fla.1983), our supreme court developed a three-part test to determine whether a defendant’s actions constitute kidnapping where the confinement is done to facilitate commission of another crime. Such confinement constitutes a kidnapping when it is: (1) not slight and inconsequential and merely incidental to the other crime; (2) not of the kind inherent in the nature of the other crime; and (3) has some significance independent of the other crime in that it makes the other crime substantially easier of commission or substantially lessens the risk of detection. Id. at 965-66.
coürt further explained the type of confinement which would constitute kidnapping when done in facilitating com-comof another crime in Berry v. State, 668 So.2d 967 (Fla.1996). There, the vic-vicwere hog-tied during a robbery, and the robbers left without untying them. The Florida Supreme Court held the act of tying someone up constitutes confinement within the meaning of the kidnapping stat-statThe court held that the first require-requireof Faison did not require movement of the victim to constitute kidnapping. “[I]t is the confinement of the victims rath-raththan their movement which justifies the kidnapping conviction.” Id. at 970. In applying the test, the court explained:
For example, if Berry and the others had confined the victims by simply holding them at gunpoint, or if the robbers had moved the victims to a different room in the apartment, closed the door, and ordered them not to come out, the kidnapping conviction could not stand. In both hypotheticals, any confinement accompanying the robbery would cease naturally with the robbery. By contrast, in this case the robbers left the *915 scene of the robbery unthout untying the victims, thereby leaving them both in a precarious and vulnerable state for a period beyond the robbery. Like the situation where the victim of a forcible felony is barricaded or locked in a room or closet, the confinement continued even after the robbery had ceased. This is not the sort of confinement that is incidental to robbery.
Id. at 969 (emphasis supplied).
In Berry, the robbers’ act of leaving the victims tied up constituted kidnapping. Likewise, in this case, the act of leaving the victims tied up constituted kidnapping. Although the victims were able to rise to their feet, they could not immediately summon help without having someone untie them. They were still left in a precarious position which made the crime substantially easier to commit and reduced the risk of detection. In fact, in each case the victims could not call the police immediately after the robbery because their hands were tied. Thus, their confinement did not end with the completion of the robbery. They were still unable to help themselves or call the police until someone untied them.
Appellant relies on Lewis v. State, 50 So.3d 86 (Fla. 4th DCA 2010), but that case is clearly distinguishable. There, the defendant entered a check cashing store and, using a gun, forced the manager to go into a bathroom and placed her in handcuffs. Later he let one hand loose of the handcuff, and the manager hit a silent panic button. When police arrived, the defendant escaped. At the time of the escape, the victim was neither barricaded nor bound. Thus, her confinement ended with the end of the robbery. Here, in contrast, the victims were still confined within the meaning of Berry when the robbery was complete.
The court correctly denied the motion for judgment of acquittal as to the kidnapping charges. The evidence proved all three Faison factors. We affirm the kidnapping convictions.
Appellant raises two other issues which we find without merit. First, he argues that certain of the prosecutor’s remarks in closing argument were error. Defense counsel, however, did not object to those comments, and we do not find that they constituted fundamental error. In particular, the prosecutor’s reference to the four defendants as a “criminal gang” was not impermissible in this context where the defendants, who were tried together, were accused of RICO violations for the string of robberies in which they were involved. The prosecutor’s reference to a “criminal gang” was merely fair reply to the defendant’s argument that the defendants were not a RICO “enterprise.” Under Florida RICO, an “enterprise” is defined as:
[A]ny individual ... or group of individuals associated in fact although not a legal entity.... A criminal gang, as defined in s. 874.03, constitutes an enterprise.
§ 895.02(3), Fla. Stat. (2012) (emphasis supplied).[1]
Further, the reference in closing argument to all of the defendants’ nationalities, which was also not objected to, was relevant to the issue of the RICO enterprise. As was explained in Gross v. State, 765 So.2d 39, 45 (Fla.2000), to prove an enterprise under Florida RICO, the state *916 has to establish two elements: “(1) an ongoing organization, formal or informal, with a common purpose of engaging in a course of conduct, which (2) functions as a continuing unit” (emphasis supplied). In Gross, because the defendant and his associates committed the various crimes for more than a year and discussed and coordinated their crimes in advance, there was evidence to support the RICO convictions. Applying Gross to this case, the prosecutor’s reference to the fact that the co-defendants were all Honduran, knew each other, and each robbery was planned and committed in a similar fashion supported the state’s contention that they were part of the same “enterprise” for RICO purposes.
For the foregoing reasons, we affirm the conviction and sentences.
STEVENSON and TAYLOR, JJ., concur.

. Section 874.03(1), Florida Statutes (2008), defines a "criminal gang” as "a formal or informal ongoing organization, association, or group that has as one of its primary activities the commission of criminal or delinquent acts, and that consists of three or more persons who have a common name or common identifying signs, colors, or symbols ...”