DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**VICTOR CASTILLO,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D12-1584

[July 1, 2015]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Richard L. Oftedal and Amy Smith, Judges; L.T. Case No. 2007CF017817CXX.

Carey Haughwout, Public Defender, and Patrick B. Burke, Assistant Public Defender, West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, Tallahassee, and Nancy Jack, Assistant Attorney General, West Palm Beach, for appellee.

WARNER, J.

Victor Castillo appeals his convictions for racketeering and conspiracy to commit racketeering. First, he contends that the state failed to prove interrelatedness between the predicate incidents and the criminal street gang, of which he was a member, for purposes of proving a pattern of racketeering activity and as to the conspiracy to commit racketeering. Second, as one of the predicate incidents occurred when he was a juvenile, he contends that it could not serve as a predicate incident because it was not "chargeable by indictment or information." Finally, he claims that the court erred in failing to grant a severance of his trial from his co-defendants, because, of the more than sixty predicate incidents only three involved him, thus making the evidence of the other incidents unduly prejudicial. We affirm on all issues.

Appellant was charged, along with thirteen other defendants, with racketeering and conspiracy to engage in racketeering, in violation of the Florida RICO statutes. The information alleged that appellant was part of a criminal street gang called SUR 13. Although the information listed over

eighty predicate acts to form a pattern of racketeering activity, only five involved appellant. Several of his co-defendants pled guilty and agreed to testify against other members of the gang. Two of the remaining defendants were tried with him, although he moved to sever his trial from theirs because of the volume of predicate acts involving the other co-defendants. The trial court denied the motion.

The trial lasted for a month with over 100 witnesses testifying for the state. The state showed through the testimony of its members that SUR 13 was a criminal street gang comprised of Mexicans, and that the gang had existed at least from the time that appellant joined it sometime between 1998 and 2000. Appellant, Castillo, along with Ernest Campos and Jose Sanchez, were the leaders of the gang, although Campos was the primary leader and Sanchez merely approved his orders. The gang existed to commit violence and crimes, and engage in drug activity. The gang had a membership ritual of a "beat-down" of new members by other members. Once a person became a member, he was expected to commit crimes to grow the gang's reputation for violence and thus gain respect. Gang members were expected to protect other members of the gang and to stand up to the police. SUR 13 members committed acts of violence against members of several rival gangs. Members would be disciplined with violence for violating orders. When a member wanted to leave the gang, he was required to commit acts of violence first. Some members testified that they had convictions related to drugs, acts of violence, and resisting arrest. They said that these acts were gang-related, as they were trying to develop the reputation of the gang.

Multiple members of the gang testified to appellant's leadership role in the gang. He wore the gang's tattoos and would direct the commission of crimes. He also committed crimes, including drug crimes. Several witnesses testified to appellant's possession of guns and his use of them in shootings, although those were not the predicate acts charged against appellant.

Much of the evidence presented was directed at predicate acts of the other defendants. These consisted of murders, attempted murders and other shootings, drug trade, arson, and other crimes which appellant claimed had nothing to do with him. Nevertheless, there was testimony that some of those crimes were done at appellant's direction or with appellant's knowledge. Further, there was substantial evidence that these predicate acts, or at least many of them, were committed in order to increase the gang's reputation, particularly with other gangs.

2

The specific predicate acts charged against appellant, which the jury found that he committed, were: (1) resisting arrest without violence on July 9, 2000; (2) possession of cocaine; and (3) battery. He was also charged with petit theft and conspiracy to commit first degree murder, but the jury did not find that he committed these predicate acts.

The first predicate act, of resisting arrest, occurred after an officer spotted appellant in a bar from which appellant had previously been issued a trespass warning. He began making a disturbance and was asked to leave. He took a fighting stance toward the officer at the bar and started to come at the officer, who then pepper sprayed him. He was arrested for resisting arrest without violence. After the arrest, the officer identified him as being a member of a gang and observed a gang tattoo on his neck.

The other two predicate acts occurred during an incident at a night club. The appellant was at a bar with another one of the leaders of SUR 13. The victim was in the bathroom when appellant attacked him with a bottle, as did two other individuals with appellant. The victim was taken to the hospital, and when an officer arrested appellant, cocaine was found on him.

The jury found appellant guilty of racketeering, concluding that the state had proved three predicate acts: resisting arrest, possession of cocaine, and battery. The judge convicted him and sentenced him to thirty years imprisonment for racketeering and fifteen years for conspiracy, to be served consecutively. He appeals.

The purpose of the Florida RICO statute is to punish those who engage in a pattern of criminal activity more severely than those who commit only unrelated predicate offenses. *Carroll v. State*, 459 So. 2d 368, 370 (Fla. 5th DCA 1984). Pursuant to the Florida RICO statute, section 895.03(3), Florida Statutes (2007):

> It is unlawful for any person employed by, or associated with, any enterprise to conduct or participate, directly or indirectly, in such enterprise through a pattern of racketeering activity. . . .

A criminal street gang falls with the statutory definition of an "enterprise." *See* § 895.02(3), Fla. Stat. (2007). Section 874.03, Florida Statutes (2007), defines a "[c]riminal gang" as:

> a formal or informal ongoing organization, association, or group that has as one of its primary activities the commission

of criminal or delinquent acts, and that consists of three or more persons who have a common name or common identifying signs, colors, or symbols, including, but not limited to, terrorist organizations and hate groups.

"Racketeering activity" is defined in 895.02(1), Florida Statutes (2007), as:

to commit, to attempt to commit, to conspire to commit, or to solicit, coerce, or intimidate another person to commit:
(a) Any crime that is chargeable by petition, indictment, or information under [certain] provisions of the Florida Statutes[.]

Those provisions include obstruction of justice pursuant to Chapter 843, battery under Chapter 784, and drug offenses under Chapter 893.

A "[p]attern of racketeering activity" is defined in 895.02(4), Florida Statutes (2007), as:

engaging in at least two incidents of racketeering conduct that have the same or similar intents, results, accomplices, victims, or methods of commission or that otherwise are interrelated by distinguishing characteristics and are not isolated incidents, provided at least one of such incidents occurred after the effective date of this act and that the last of such incident occurred within 5 years after a prior incident of racketeering conduct.

Because the Florida RICO statute is modeled on the Federal RICO statute, *Gross v. State*, 765 So. 2d 39, 42 (Fla. 2000), Florida courts have looked to the federal courts for interpretation of Florida's statute.

The Florida Supreme Court has adopted an expansive view of what constitutes an "enterprise" for purposes of RICO, siding with federal courts which found the purpose of RICO "to be much broader and not limited solely to the eradication of organized crime." *Gross*, 765 So. 2d at 45. "In order to prove an enterprise, the State need only establish two elements: (1) an ongoing organization, formal or informal, with a common purpose of engaging in a course of conduct, which (2) functions as a continuing unit." *Id.* Moreover, as noted above, the Legislature included a "criminal gang" within the definition of enterprise. Such an enterprise, by statutory definition, is simply a group which has as its primary purpose the commission of criminal or delinquent acts—like SUR 13. The evidence presented showed that SUR 13 was indeed a criminal gang, with

identifying symbols and rituals, whose purpose was to increase its reputation by committing crimes and violent acts, protecting its members, and standing up to the police.

## Interrelatedness Between Predicate Incidents
## and Criminal Street Gang

Appellant does not contest that he was part of a criminal street gang. He contends that the state did not prove that any of the predicate acts which the jury found he committed constituted a pattern of racketeering activity, as they were isolated incidents and random crimes which were not gang-related. He relies on our supreme court's discussion of "pattern" in *Bowden v. State*, 402 So. 2d 1173, 1174 (Fla. 1981), in connection with the distribution of obscene literature and pornography:

> This definition of "pattern of racketeering activity" suggests that the similarity and interrelatedness of racketeering activities should be stressed in determining whether a "pattern of racketeering activity" exists. As used in this statute, the word "pattern" clearly requires more than accidental or unrelated instances of proscribed behavior. We construe the "pattern" element to require, in addition to similarity and interrelatedness of racketeering activities, proof that a continuity of particular criminal activity exists . . . .
>
> By requiring a continuity of criminal activity as well as a similarity and interrelatedness between these activities, the target of RICO Act prosecutions will be, appropriately, the professional or career criminal and not non-racketeers who have committed relatively minor crimes.

*Bowden,* however, involved the more traditional view of the term "enterprise," consisting of the "professional or career criminal." While *Gross* took an expansive view of what constituted an enterprise, it followed *Bowden* in stating: "We adhere to the view that while the State's ability to prove the enterprise element should not be hindered by having to prove an ascertainable structure, the State should equally not be able to routinely invoke the RICO statute for prosecuting any ordinary set of crimes." *Gross,* 765 So. 2d at 46 n.5. *Gross* has been invoked in a criminal gang case to note "the concept of enterprise is not to be applied to 'garden variety criminal undertakings.'" *Jackson v. State*, 858 So. 2d 1211, 1213 (Fla. 3d DCA 2003).

5

In *U.S. v. Eufrasio*, 935 F.2d 553 (3d Cir. 1991), the court explained that each defendant in a criminal enterprise may participate in the enterprise's affairs through different, even unrelated crimes, so long as it can be reasonably inferred that each crime was intended to further the enterprise's affairs. *Id.* at 565-66. In *Eufrasio*, three defendants were charged with RICO violations for participating in the Scarfo mafia family. Scarfo, the boss, appointed lesser officers as "captains" over a crew of "soldiers." *Id.* at 559. One captain supervised soldiers including Eufrasio and Iacona. *Id.* They were involved in illegal video poker machine gambling, and extorted competitors of the business. *Id.* at 559-61. Predicate acts for the RICO charge, however, included a murder, which Eufrasio contended was not part of a single pattern of racketeering activity "because the . . . murder conspiracy was not alleged to involve the same or similar purposes, results, participants, victims or methods of activity associated with the alleged gambling and extortion predicates." *Id.* at 563. The appellate court rejected this argument holding:

> [W]hen a proven organized crime entity like the Scarfo Family is the relevant enterprise in a RICO case, the relationship prong of RICO's pattern requirement is satisfied by functionally unrelated predicate acts and offenses, if the predicates are undertaken in association with, or in furtherance of criminal purposes of the same organized crime enterprise.

*Id.* at 565. The court quoted *United States v. Angiulo,* 897 F.2d 1169, 1980 (1st Cir. 1990):

> [P]attern may be proven through the nature of the RICO enterprise. For example, two racketeering acts that are not directly related to each other may nevertheless be related indirectly because each is related to the RICO enterprise.

*Eufrasio*, 935 F.2d at 565. Thus, even separately performed predicate acts which are not directly related will form a pattern under RICO, as long as they all have been undertaken in furtherance of one or another varied purposes of a common organized crime enterprise.

In this case, SUR 13 constituted a criminal gang with a wide-ranging purpose of simply committing criminal acts to enhance their reputation in the community. Appellant was one of the leaders of the gang. Several gang members testified as to a variety of crimes they committed, either on the order of the leaders or to increase the reputation of the gang. These included several defendants testifying that they had been arrested for

resisting officers, and those crimes were in furtherance of the gang. The gang members were told not to back down from enemies and not to cooperate with the police.

One of the predicate acts that the jury found that the appellant committed was resisting an officer without violence. This occurred in 2000 at a bar from which appellant had previously been ordered to leave. Appellant disobeyed the officer's order to leave by taking an aggressive stance toward the officer. The officer did not testify that there were any other gang members around, nor did he say that appellant voiced his resistance by reference to his gang. The officer noticed that appellant belonged to a gang after the arrest when he observed appellant's tattoo.

Two views can be taken of this act. It could have been an isolated incident and was not in furtherance of any gang activity, because there was no connection to the gang, other than appellant's tattoo. On the other hand, gang members were supposed to stand up to the police, and others testified that they too had been charged with resisting arrest and considered it gang-related activity. Because of the broad definition of "criminal gang" in the statute, the gang's purpose to commit criminal acts, and in light of the testimony of the other gang members regarding resisting arrest, we conclude that the resisting arrest charge can be considered a predicate act for a RICO conviction.

The jury also found that appellant had committed battery as another predicate act. The battery occurred in the bathroom of a night club while other members of the gang were present. As the other members testified that committing criminal acts of violence was central to the purpose of the gang, we find that the incident constituted a predicate act.

Finally, the jury found that appellant's possession of cocaine found on him after arrest for the battery constituted a third predicate act. We are less certain that mere possession of an illegal substance constituted an act in furtherance of the gang. The amount possessed was a small quantity consistent with individual consumption. Nevertheless, the state presented testimony from other gang members that they possessed and used cocaine to participate in SUR 13. Based upon this testimony, there was competent substantial evidence to find that this too was a predicate act forming a pattern of racketeering activity. Because the jury found three predicate acts of racketeering activity, the state proved the RICO charge against appellant.

## Predicate Acts Occurring While a Juvenile

Appellant also challenges his conviction for conspiracy to commit a RICO violation, claiming that the evidence supported two conspiracies, not one, and neither was related to SUR 13. We disagree and conclude that the evidence showed a single overarching conspiracy of which appellant was a member. There is no requirement that each member of a conspiracy conspire directly with every other member of the conspiracy. *See United States v. Friedman*, 854 F.2d 535, 561 (2d Cir. 1988) ("[A] RICO conspiracy is by definition broader than an ordinary conspiracy to commit a discrete crime. Each member of a RICO conspiracy need only conspire to participate in the affairs of the alleged enterprise through two predicate crimes.").

One of the predicate acts charged by the state occurred when appellant was still a juvenile. Appellant argues that the court should have stricken that act, because at the time of the information the RICO statute, section 895.02(1)(a), Florida Statutes (2007), allowed only racketeering which was "chargeable by information or indictment," not by juvenile petition. After October 2008, the statute was amended to add that crimes chargeable by "petition" could be the basis for racketeering charges. He claims that to permit his juvenile delinquency adjudications to be included was an *ex post facto* application of the amended statute.

We agree with the state, however, that this was not a substantive change in the statute. The RICO statute focuses on the conduct proscribed, not the individual. Appellant was not being charged with the crimes committed while he was a juvenile; these were simply the predicate acts. In 2007 when the indictment was filed, the crime of resisting arrest was "chargeable" by information or indictment. Therefore, it would qualify as a predicate act. Moreover, the Legislature clearly intended to include within the ambit of section 895.02, Florida Statutes (2007), juvenile delinquent acts committed by criminal gang members, as in 2007 it defined a "criminal street gang" as group whose primary activities were "the commission of criminal or **delinquent** acts[.]" § 874.03, Fla. Stat. (2007) (emphasis supplied).

## Denial of Motion for Severance

Finally, appellant claims that the trial court erred in denying his motion to sever his trial from his co-defendants. An order granting or denying a motion for severance must be upheld unless there is a showing of abuse of discretion. *Crossley v. State,* 596 So. 2d 447, 450 (Fla. 1992).

8

Appellant moved to sever prior to trial. He argued that the acts of one of his co-defendants, Trejo, were not related in time with his acts. Trejo's acts occurred in July/August 2007, and appellant's predicate acts occurred in 2000 and 2006. He also argued that only five of the eighty-one total predicate offenses, for both him and his co-defendants, related to him. He asserts that the state presented evidence of two murders, attempted murder, shootings, drug trade, arson and other gang crimes in which he was not involved, which caused severe prejudice to him. As to one of the murders, the state alleged that he <u>was</u> involved, although the jury disagreed. The state, on the other hand, contends that because this was a crime of racketeering based upon a criminal enterprise, namely the criminal street gang, and the state sought to prove that appellant was a leader of the gang, the evidence of the other predicate acts was necessary to show how the gang operated and that the gang was involved in racketeering activity.

In essence, appellant is claiming "spillover" prejudice from the numerous predicate acts in which he had no direct involvement. In *U.S. v DiNome*, 954 F.2d 839, 843 (2d Cir. 1992), the court said of such a claim:

> [T]he government must prove an enterprise and a pattern of racketeering activity as elements of a RICO violation. 18 U.S.C. § 1962(c). Proof of these elements may well entail evidence of numerous criminal acts by a variety of persons, and each defendant in a RICO case may reasonably claim no direct participation in some of those acts. Nevertheless, evidence of those acts is relevant to the RICO charges against each defendant, and the claim that separate trials would eliminate the so-called spillover prejudice is at least overstated if not entirely meritless.

*Id.* at 843. Just as in the RICO trial in *DiNome,*

> [T]he evidence of the . . . various criminal activities was, therefore, relevant to the RICO charges against each appellant . . . . because it tended to prove: (i) the existence and nature of the RICO enterprise and (ii) a pattern of racketeering activity on the part of each defendant by providing the requisite relationship and continuity of illegal activities.

*Id.* The same reasoning applies in this case. The predicate acts against other members were necessary to explain the nature of the gang and its purpose as well as the continuity of the illegal activities.

"A denial of a motion for severance constitutes an abuse of discretion only if the defendant can demonstrate that he was injured by having a joint trial." *Daniels v. State*, 634 So. 2d 187, 192 (Fla. 3d DCA 1994).

> Severance is not necessary, however, "when all the relevant evidence regarding the criminal offense is presented in such a manner that the jury can distinguish the evidence relating to each defendant's acts, conduct, and statements, and can then apply the law intelligently and without confusion to determine the individual defendant's guilt or innocence."

*Coleman v. State*, 610 So. 2d 1283, 1285 (Fla.1992) (quoting *McCray v. State*, 416 So. 2d 804, 806 (Fla. 1982)). Here, the jury clearly was able to make the distinctions between the evidence relating to each defendant's acts, because it did not find that appellant was involved in the predicate act of attempted murder. The court did not abuse its discretion in denying the motion for severance.

For the foregoing reasons, we affirm the convictions and sentences of appellant.

MAY and GERBER, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***